# WEATHERWAX *et al. v.* COSUMNES VALLEY MILL CO., HINDS *et al.*

PAYMENTS made on an open account for goods sold and delivered due for more than a year, do not make the account a mutual account within the eighteenth section of the Limitation Act of 1850, and the account is barred.

The fact that the memorandum book of plaintiff in which the account was kept and the passbook of defendant were compared by them, and the result ascertained and the account orally acknowledged by defendant to be correct, amounts to no more than a parol admission of *its* correctness, which would *not take the* case out of the statute. And had these books been produced on the trial, the *mere entries therein of the items of the account* with this oral acknowledgment of its correctness, would not place the account on any different footing, so far as the Statute of Limitations is concerned, than if no such acknowledgment had been made.

The fact that defendants once gave plaintiff a lump of gold amalgam to be sent to the mint for coinage, the proceeds to be applied to plaintiff's account, does not make the account mutual, nor affect the case in respect to the Statute of Limitations.

APPEAL from the Eleventh District.

Weatherwax *v.* Cosumnes Valley Mill Company.

Assumpsit for goods, wares and merchandise sold and delivered; for cash paid, laid out, etc., and on account stated.   The suit—brought May 30th, 1859—was against Hinds and several other defendants as late partners doing business as quartz miners under the firm name of "The Cosumnes Valley Mill Company."   Hinds alone was served, and answered in substance that he had ceased to be a partner before the debt was contracted, and that it was barred by the Statute of Limitations of one year.

On the trial plaintiffs introduced as a witness Bryant, one of the defendants, who testified on the points material to the case substantially as follows: that about the first of October, 1857, he as managing agent of the company opened an account with plaintiffs, which account was kept open for some time; that plaintiffs furnished him as such agent money and goods to a large amount, he from time to time paying them money on account; that he never paid or furnished them anything but money except once, from the third to the eleventh of June, 1858, when he delivered to plaintiffs a lump of gold amalgam to be by them sent to the mint, and after the proceeds were returned—about the nineteenth of June, 1858—the company was to be credited therewith; that plaintiffs kept the accounts, witness, as agent of the company, keeping only a passbook in which the entries were made by plaintiffs, or their clerk, in the usual way—that is when goods were sold or money loaned by plaintiffs to defendants, the items were entered by plaintiffs in their books and also in the passbook which witness had; that June 15th, 1858, witness as agent had a settlement with plaintiffs, that is, they compared these books and there was found due plaintiffs $3,498.14, the settlement being made upon plaintiffs' books and defendants' passbooks, of which there were two, one containing entries up to April 5th, 1858, and the other beginning after that date.

There is no proof when the last item was charged in this second passbook, which was missing at the trial.

When plaintiffs rested, defendants moved for a nonsuit on the ground that plaintiffs had not proved any items of their account to have been furnished within the year next preceding the commencement of the suit, and had not proved the account to have been mutual.   Overruled, defendants excepting.

23

The Court below instructed the jury upon the Statute of Limitations, that they must first find whether the account was a mutual account; that mutual accounts exist only where there are reciprocal demands—that is, each party must have an account upon which he can sue the other; that the account is not mutual when one of two parties sells to the other, and the latter makes payments in money or property; that in this case, in order to prove a mutual account, plaintiffs must show that they have purchased or received of defendants articles or commodities of some kind of which the defendants kept an account against plaintiffs, or for which defendants had a right of action against plaintiffs; that whether the jury found there were mutual accounts or not between the parties, plaintiffs must prove that some of the articles were delivered within one year previous to the commencement of this suit; that if the account was mutual, and plaintiffs have proved any of the items to have been delivered within the year before suit, then they can recover the whole amount claimed; but that if the account were not mutual, they can only recover for such items as they have proven to have been furnished within one year before suit.

The Court refused the following instruction, in substance, asked by plaintiffs: " If the jury find that on the fifteenth day of June, 1858, Bryant and plaintiffs met together for the purpose of adjusting and settling the accounts between plaintiffs and defendants, which had been created within one year previous, and they did then proceed to examine all the accounts, debit and credit, then existing, and did then and there ascertain and adjust the balance due the one from the other, and did fix and agree between themselves upon an exact amount which was the balance due from the one to the other, then a suit on that balance cannot be barred by the statute in less than one year from the day of that adjustment.

The case was submitted to the jury for verdict on the three following propositions: 1st, was Hinds a partner and liable with the other defendants? 2d, was there a mutual account between the plaintiffs and the Cosumnes Valley Mill Co. ? 3d, is the plaintiff's demand, or any portion of it, barred by the Statute of Limitations, and if so, what part? The first two questions the jury found in the negative, and as to the last they found that the whole account was barred. Judgment for defendants, plaintiffs appeal.

*Robinson, Beatty & Heacock,* for Appellants.

I. The fact that defendants had the possession and control of the passbook makes the account mutual, because this passbook constitutes their account book. The cases on this head, which lay down the rule that payments made on account do not constitute "mutual, open, current account," so as to cause the statute only to run from the last item on either side, are cases where the accounts were kept solely by the plaintiff, and the defendant kept no account of the payments. But even if the rule were otherwise, that mere cash payments on one side could not make the accounts mutual, still that rule could not be applied to this case, because defendants furnished to plaintiffs a lump of amalgam to be sold on account of defendants and the proceeds applied to their credit. This item was the subject of offset and mutual account, entered on the passbook of defendants, and comes within the strictest rule. The fact that plaintiffs delivered the amalgam to be sent to the mint, and on getting the returns in cash credited the defendants with the proceeds, could make no difference. The original transaction was a deposit and receipt of amalgam, to be disposed of by plaintiffs as factors of defendants. (*Penniman* v. *Rotch,* 3 Met. 216, a case directly in point.)

The account then being mutual, the statute began to run only from the date of the last item, to wit: from the third to the eleventh of June, 1858, when the amalgam was received, or from June 19th, 1858, when its proceeds were returned from the mint.

II. But if the account was not "mutual" within the statute (Wood's Dig. 48, sec. 18) there was an "account stated." To make an account stated it is only necessary that the parties to an account should meet together and compare the state of their accounts, and agree that there is a certain *definite* balance due from one to the other. It is not necessary that anything should be written—that any books or accounts should be exhibited. Either or both parties may depend on their memories for the items of their accounts.

After the comparison of the books of plaintiffs and the passbook of defendants, the parties agreed that a balance of $3,478.14 was

due from defendants to plaintiffs on the fifteenth day of June, 1858. (*Talland* v. *Sprague*, 12 Pet. 300 ; *Knowles* v. *Mickel*, 13 East. 249 ; *Highman* v. *Primrose*, 5 Maul & Selwyn, 65 ; Bouv. Law Dic. 49.) Hence the instruction asked by plaintiffs on this point should have been given.

It is no answer to say that, even if this was an "account stated," it is not taken out of the statute because the thirty-first section requires an "acknowledgment or promise" in writing to prevent the statute running against an open account. An "account stated" does not operate as a promise to pay an old debt, but it creates an "original and separate demand," (Ang. on Lim. 139, 140) and suit must be brought on the account stated, and the statute runs from the stating of the account. Our statute is two years on all ordinary actions of assumpsit. The one year act only applies to "open accounts for goods," etc. But an "account stated" is no longer an "open account," and hence is subject to the limitation of two years. So that it is immaterial, under this view, whether the statute began to run at the sale of the first article in October, 1857, or on the day of stating the account in June, 1858.

*S. W. Sanderson*, for Respondents.

I. The entry of debits and credits on the books of plaintiffs and on the passbook of defendants did not make mutual accounts, so as to take the plaintiffs' account out of the one year Statute of Limitations. To make an account mutual there must be an account on both sides—upon which either may maintain an action against the other. In other words, there must be mutual debts existing between the parties, which may be set off, the one against the other. There must be two separate accounts, each party keeping his own account, and having a right of action therein, independent of the other. "Mutual accounts are made up of matters of set-off." (Angel on Limitations, 163, sec. 149.) There must be mutual dealing and trading—a buying and selling on both sides. (*Murray et al.* v. *Coster et al.*, 20 Johns. 576 ; *Kimball et al.* v. *Brown*, 7 Wend. 322 ; *Chamberlin* v. *Cuyler*, 9 Id. 126.) "To constitute a mutual account, within the exception of the Statute of Limitations, there must be reciprocal demands ; it does not apply where the demand

is altogether on one side, though payments on account have been made." (*Ingraham* v. *Sherard*, 17 Serg. & Rawle, 347.) "Accounts are mutual where each party makes charges against the other in his books for property sold, services rendered, or money advanced, etc." (*Carling* v. *Scoulding*, 6 T. R. 189; *Edmonstone* v. *Thompson*, 15 Wend. 554.) There must be a mutual or alternate course of dealing. (*Fox* v. *Smith*, 6 How. [Miss.] 346.)

Our statute is conclusive of what are mutual accounts. The language is: "Where there have been reciprocal demands between the parties." (Wood's Digest, 48, sec. 18.) This case does not come within any of the foregoing definitions. It does not appear that the defendants have any "demand" against the plaintiffs. It does not appear that the defendants ever sold the plaintiffs a piece of "property," or "rendered them a service," or "advanced them a cent of money." But it does appear that the defendants never furnished anything to the plaintiffs except money, which was given as payment, except in one instance, when Bryant gave them a lump of gold amalgam, which was not sold to them, but sent to the mint for coinage, and its proceeds credited to defendants.

These payments do not make the accounts mutual. The language of the statute is, "reciprocal demands." (Wood's Dig. 48, sec. 18.) Payment and demand are not synonymous. No action lies upon a payment. "Where payments on account are made by one party, for which credit is given by the other, it is an account without reciprocity, and only upon one side." (Angell on Limitations, 164, sec. 149; *Ingraham* v. *Sherard*, 17 Serg. & Rawle, 347; *Lowber* v. *Smith*, 7 Barr. [Penn.] 381–2; Watts & Serg. 137.) Nor does the passbook kept by defendants suffice to make the account mutual. All the entries in the passbook were made by the plaintiffs or their clerk. The entries thus made were exact copies of the entries in plaintiffs' book. It was, then, but a copy of plaintiffs' account.

Did the settlement spoken of by Bryant amount to an account stated?

Bryant, one of the defendants, with Weatherwax, one of the plaintiffs, compared the passbooks referred to and the account books of the plaintiffs, and found that they agreed, and that both

showed the same balance. Beyond this, there was no settlement or statement of accounts.

But these two questions as to whether there was a mutual account or an account stated, are immaterial. Whether there was a mutual account or not is immaterial, because the plaintiffs failed to prove any item thereof within the year. Whether the account was "stated" or not is immaterial, because if it was the same it could not, under the provisions of our statute, take the account out of its operation. Under the early English statute, as well as most of the United States, when the account becomes a stated account the statute commences running from that time. Under the provisions of the statutes, when this doctrine has been maintained, however, a parol promise or acknowledgment of the debt is sufficient to take it out of the statute. And it was for this reason, and no other, that the statement of the account was held to take it out of the statute, upon the ground solely that such statement was an acknowledgment of the debt; and an action may be maintained upon such acknowledgment. (*Ashley* v. *Hill*, 6 Conn. 246; *Lord* v. *Shaler*, 3 Id. 131; *Lord* v. *Harvey*, Id. 370; *Clemenston* v. *Williams*, 8 Cranch. 74.) But under our statute, "no acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this statute, unless the same be contained in some writing signed by the party to be charged thereby." (Wood's Dig. 49, sec. 31.) If, then, the statement of the account takes it out of the statute, it is because such statement is a new contract or a continuance of the old one; and in either case it must be in writing, and "signed by the party charged therewith."

It is not pretended that anything more than a parol statement of accounts was shown by plaintiffs. "Even a parol statement of accounts made within six years, (or one) will not bar the statute if the original cause of action be more than six years (one year) old," as such account stated merely amounts to a promise to pay the old debt, which should be in writing, according to the provisions of the act." (Angell on Limitations, 3d edition, 538 and sec. 274, and authorities there cited.) This is conclusive of the question, and therefore it was not error in the Court to refuse to give the third

instruction asked for by the plaintiffs, for the same does not require the writing made necessary by the statute, and therefore is not the law of the case.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Suit on an open account. The Statute of Limitations, among other defenses, was pleaded by defendants. It seems some payments were made by the defendants. It is not questioned that the account was due for more than a year. It is argued that these payments make the account a mutual account within the exception of the statute. (Art. 18, sec. 18, Wood's Dig. 48.) That exception is as follows : " In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item in the account on either side." But it is well settled " that where payments have been made by one party, for which credit is given by the other, it is an account without reciprocity and only upon one side." (Angell on Lim. 164, sec. 149.)

We see no facts which withdraw the case from the influence of the statute. The mere fact that the memorandum book of the plaintiffs and that kept by the defendants were compared, and the result ascertained, and the accounts orally acknowledged by one of the defendants to be correct, is nothing more than a parol admission of the correctness of the account. These books were not produced, and if they had been, under our statutes, the mere entries of the items, though orally acknowledged to be correct, would not place the account on a different footing, so far as the Statute of Limitations is concerned, than if no such acknowledgment had been made. Article thirty-one, section thirty-one of the act (Wood's Dig. 49) declares that no acknowledgement or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of the statute, unless the same be contained in some writing signed by the party to be charged thereby.

We do not regard the fact that one of the defendants gave plaintiffs a lump of gold amalgam to be sent to the mint for coinage

as having any effect upon the case in respect to the statute. The proceeds were paid to the plaintiffs, and credited on the account.

The jury specially found in favor of defendants upon this plea of the Statute of Limitations; and this finding, which seems to be supported by the proofs, is conclusive of the case. It is not necessary to examine other points.

Judgment affirmed.