# ISAAC WARREN, Appellant, *v.* EDWARD D. SWEENEY, Respondent.

"MUTUAL, OPEN AND CURRENT ACCOUNTS." A "mutual, open and current account where there have been reciprocal demands," within the meaning of Section 17 of the Statute of Limitations, is one consisting of demands upon which each party respectively might maintain an action.

THE SAME. If all the items on one side of an account were intended by the parties as payments or credits on account, it is not a mutual, open and current account where there are reciprocal demands.

PERSONAL PROPERTY DELIVERED ON ACCOUNT. If an article of personal property be delivered to a creditor, with an understanding between him and the debtor that it shall apply as payment, the transaction would not constitute a mutual account, consisting of reciprocal demands between them. Otherwise, if delivered without such understanding.

MODIFICATION OF JUDGMENT. Where a judgment of nonsuit was rendered, but the judgment actually entered was in form a judgment on the merits, the Supreme Court on appeal modified it to conform to the fact, at respondent's costs.

PER BEATTY, C. J., DISSENTING. Whenever there is an open, running, unsettled account on one side, and money or any article of personal property is either paid or delivered to be credited on the other side of the account, it constitutes a "mutual, open and current account, with reciprocal demands between the parties."

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are duly stated in the opinions.

*R. M. Clarke*, for Appellant.

Mutual accounts are made up of matters of set-off. Wherever there is an express or implied understanding that mutual debts shall be a satisfaction or set-off *pro tanto* between the parties, the account is mutual, and a single item on either side will take the case out of the Statute of Limitations. (Angell on Limitations, Sec. 149; 3 Met. (Mass.) 216; 6 Cow. 192; 20 Wend. 72; 7 Wend. 322–326.)

*Clayton and Davies*, for Respondent.

By the Court, LEWIS, J.

"In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal de-

mands between the parties, the cause of action shall be deemed to have accrued from the time of the last item found in the account on either side." Laws of 1861, page 29, Sec. 17.

What particular character of dealing between parties will constitute a mutual, current account•within the meaning of this section of the Statute of Limitations is the only material question involved in this appeal, and to that alone our considerations will be confined.

To bring an account within this section of the statute, there must be mutual demands between the parties—demands upon which each might maintain an action. Where payments on account are made by one party, for which credit is given by the other, it is an account without reciprocity, and only upon one side ; at least, it cannot be said to be a mutual account *consisting of reciprocal demands.* The items on either side must be such as to authorize the bringing of an action upon them. If all items on one side were intended by the parties as a payment or credit upon an existing account, there would be no such demand in favor of the person making the payments as to entitle him to maintain an action, because the simple showing of the fact that the items upon which he brings his action were intended as payment of a claim against himself, would defeat his action. If an article of personal property be delivered to the creditor with an understanding between him and the debtor that it shall apply as payment, the transaction would not constitute a mutual account consisting of " *reciprocal demands*" between them. But if, instead of delivering such property as payment, it were delivered without an understanding or agreement that it should be taken as payment, it would be treated as a sale, upon which an action might be maintained. Such appears to be the doctrine generally established by the authorities. (2 Watts & Sargeant, 137 ; *Lowber* v. *Smith*, 7 Barr, (Penn.) 381.)

In the latter case, the arrangement between the parties was to effect an exchange of saltpeter for gunpowder, or rather, Lowber was to receive gunpowder in payment for saltpeter, instead of cash. In delivering the opinion of the Court, Mr. Justice Rogers said : " The question therefore is, granting it to be as stated, was there such a mutual account as that one item within six years takes the

whole account out of the statute ? This point came before the Court in *Ingram* v. *Sherwood,* 17 Serg. & R. 347, and it was there held that to constitute a mutual account within the exception of the statute, there must be a reciprocal demand ; that it does not apply where the demand is altogether on one side, though payments on account have been made. In the case cited, the payment was to be made in cash, *but whether in cash or in kind can make no difference. The principle ruled in the case cited is, that there must be a reciprocal demand ; that is, each party must have a right of action.*"

So in the case of *Weatherwax* v. *Cosumnes Valley Mill Co. et als.,* 17 Cal. 344, the same doctrine is laid down, and in *Norton* v. *Larco,* 30 Cal. 126, the learned Chief Justice, in delivering the opinion of the Court, used this language : " It must be admitted that a payment, whether it be of money or of any article of personal property of a stipulated value, made an account, would not make an account a mutual account consisting of reciprocal demands." See also Angell on Limitations, Sec. 149. When therefore it is sought to establish a mutual account, consisting of reciprocal demands, by showing the delivery of some article of personal property, the material question is, whether it was the intention of the parties to treat it as payment upon account. If it were intended as payment, or if it be shown that such was the agreement or understanding between them, it must be treated by the Courts as money paid upon account, and nothing more, which does not, as we have endeavored to show, make a mutual account, " *consisting of reciprocal demands.*"

The testimony in this case shows no mutual account or reciprocal demands between the plaintiff and defendant. It was proven that work had been done by the plaintiff for the defendant, for which a charge of twenty-three hundred and nine dollars was made. It is however admitted that no work was done within two years prior to the bringing of this action. But it is sought to bring the claim within the saving of the statute by proof of the delivery by the defendant to the plaintiff of a wagon within the two years, for which the defendant received a credit of one hundred dollars. Had it been shown that this wagon was sold to the plaintiff, or had the delivery been such as to authorize an action for its value by the

defendant; or rather, had it not been treated by the parties as a payment on account, the plaintiff would have brought himself within the saving of the statute. But by his own testimony it is proven that the wagon was delivered to him as payment of a hundred dollars on account. He testified with respect to it as so much money paid by the plaintiff. He says: "On this account the defendant has paid and is entitled to be credited with the following sums of money," — and then mentioned, among other items, "one wagon, $100." This is all the testimony in the record before us with respect to the wagon. And upon it there seems to be no alternative but to treat the item as so much money paid on account. So the Court below decided, and there is certainly no evidence in the record to warrant the conclusion that it erred.

A judgment of nonsuit was granted by the Court below, but the judgment which was actually entered is in form a judgment on the merits.

This should be corrected so as to conform it to the actual state of the case. Therefore the judgment will be modified accordingly in this Court, with cost of this appeal against respondent.

BEATTY, C. J., dissenting.

The plaintiff on the 24th of October, 1867, brought suit in his own name, (alleging that he had an assignment of the interest of Baker) to recover a balance due on account from defendant to Warren & Baker.

The answer first denies all the material allegations of the complaint, and then attempts to plead the Statute of Limitations. Three several paragraphs of the answer attempts to set up this defense. Those paragraphs are substantially as follows:

First—Defendant avers that he has had no business transactions of any kind with Warren & Baker within two years last past. That all such transactions were settled and closed more than two years ago.

Second—Warren & Baker have neither done work nor furnished materials for defendant within two years.

Third—Repeats the second, and adds, "and that said claim * * is barred by the Statute of Limitations."

It was certainly immaterial whether Warren & Baker had or had not done any work within two years, provided there was a mutual, open and current account between the parties, with reciprocal demands, and any item of the account on either side was within two years. The real defense then, if set up at all, is in the first paragraph, which denies that any business transactions of any kind have taken place between defendant and Warren & Baker within two years before the bringing of this action.

On the trial but one witness was introduced, and that was the plaintiff. Among other things he testified, that in 1864 Warren & Baker had made a special contract with defendant for erecting a house, etc., at a given price, and that the same was completed as per contract; subsequently, at request of defendant, they had done other jobs, but not on special contracts; that the jobs were reasonably worth certain sums, and had been charged for by them on their books at such prices. The whole account (with the exception of two dollars for repairing, which it seems was improperly inserted in the same) consisted of six items. One of these items only had been agreed to by both parties, the other five were charged at what plaintiffs thought reasonable, but there is no evidence defendant ever assented to these charges. The first work was done in 1864, and the last some time in 1865, but the exact date is not shown.

The plaintiff after testifying as to the work, labor, and materials furnished by himself and partner, continued as follows:

" On this account the defendant has paid, and is entitled to be credited therewith, the following sums of money, to wit: 1864, June 18th, $400; June 21st, $100; July 2d, $100; July 9th, $100; July 16th, $100; August 8th, $65; September 10th, $50; October 1st, $100; October 8th, $400; December 12th, $60. 1865, January 19th, $40; April 15th, $100; August 17th, $90; September 15th, $30; October 4th, order on T. G. Smith, $60; October 7th, watch to Baker, $45; November 2d, watch to Baker, $5; November, paid tax, (poll tax for workmen) $30; February 5th, 1866, paid tax, $20; February, 1866, ball tickets, $10; March 5th, 1866, ball tickets, $15; June 2d, wagon, $100; making

8

the whole amount, for which the defendant is entitled to credit, $1,660, and leaving a balance due to me of $649."

As it does not appear plaintiff and his partner had done any work within two years before action, the question to be determined is whether there is anything on the other side of the account to take it out of the Statute of Limitations.    Actions on account are barred in two years, except when it is for " a balance due upon a mutual, open and current account, where there have been reciprocal demands."    Then the two years only count from the last item in either account.

This suit is for a balance due on account.    First—Is it a mutual account?    The plaintiff charges for six items in the way of labor and materials, and it is not denied he had an account, or at least that he and his former partner had an account against defendant.

On the defendant's side there are credits, or counter charges, to the extent of more than twenty items.    I believe it has never been held, or even suggested, that it was necessary that a party should enter the items of charge in a book in order to make an account. If a man sell articles to his customer, and keep the articles only in his memory, it is as much an account against the purchaser as if different items were entered in a day-book and ledger.    I can see no reason why this should not come under the denomination of a mutual account.    It certainly is an open and current account.    It does not appear that any settlement was ever made between the parties, or any assent given by defendant to the correctness of any charge, except the first one.    It has then none of the elements of a settled account, but is an " open and current account."

The next question is, have there been reciprocal demands between these parties?    Upon this proposition my associates seem to hold the negative, and upon this point the case seems to turn. It is held and laid down in some of the reported cases that when there is an account on one side, and only *payments* on the other, this does not constitute mutual demands.    That the *demand* then is only on one side.    That the payments do not make a cross demand, but that each payment as made simply extinguishes so much of the debt due to the creditor.    Where there is a liquidated demand, as for instance a note or an account

Warren *v.* Sweeney.

stated and signed by both parties, and a payment is made and a credit entered on the instrument upon which suit must be brought if any is thereafter instituted, this right will be held to be such a specific application of the money paid as to deprive it of the character of a set-off or counter claim. In other words, that this was by the very act of the parties an extinguishment of so much of the original debt. But wherever payments are made on an open, current and unsettled account, it appears to me they should always be treated as counter claims or set-off. Such is their practical effect. If the creditor sues he is under no obligation to say anything about the defendant's credits or counter claims. He may leave the defendant to plead and establish the whole of his payments. Under such circumstances it seems to me the credits are legitimately counter claims, matters of set-off, or mutual demand. If, however, it should be held that payments on an open account, do not constitute mutual demands within the statute, then let us examine what are payments.

Technically payments can only be made in money. But courts have sometimes said that whatever was received and treated as payment might be so held. In this sense every article of account between two parties having mutual dealings might be held to be payment. We will suppose A. a farmer and B. a merchant, to have accounts against each other. A. delivers his wheat, his potatoes, his hay, or whatever he raises as a surplus, to his merchant on account. The merchant B., on the contrary, sends to him from time to time as he requires it, his groceries, dry goods, or whatever he deals in. Now, if the merchant's account happens to be the largest at any time when the farmer delivers a ton of wheat or hay, it might be said this was a payment on account, and not a counter claim, set-off or mutual demand. On the other hand, if the farmer's account is the largest at the time he receives a lot of groceries or a lot of dry goods, this might also be called a payment. In this way there would be no mutual accounts to which the statute could apply. But if I understand the ground taken in this case it is this, that payment only occurs where money is paid, or something else is *expressly taken as payment or as money.* Let us see how this rule will

operate practically.  A merchant in the city has two customers in the country, each of whom, on the first day of April, in 1866, owed him $100 for goods furnished from time to time within six months last past, the last item in each account having been furnished on the twenty-fifth of March preceding.  On the first day of April each of his customers brings a ton of hay to town.  No. 1 says, "Here is a load of hay; I wish you to take it at its market value, which is twenty dollars, and give me *credit* for that amount on my account."  No. 2 says, "I want you to take my load of hay at the same price, and enter it as so much *paid* on my account."

On the thirtieth of March, 1868, (no further dealings having taken place between the parties) the merchant sues each of his customers for the balance due to him, to wit, eighty dollars on each account.  As between him and No. 1, the Courts which attempt to make these nice distinctions between payment and credit would hold that there was a mutual, open and current account with mutual demands, and therefore that he would recover his eighty dollars.  But in his action against No. 2 the same Court would hold that he was barred by the Statute of Limitations.  And all this because No. 1 said give me *credit*, and No. 2 said enter it as so much *paid*.  Yet the two transactions are precisely the same.  The rights of the parties are made to depend, not on the nature of the contract or the intention of the parties, but on the accidental use or omission of the words paid or payment.  I say accidental, because it is not to be presumed that a non-professional man would understand the difference between the two expressions.  The sense of the thing is precisely the same in each case, to deliver the hay and get credit on the respective accounts for its value.

I cannot believe that it accords with justice or reason to make the rights of parties depend on such technical and unsubstantial distinctions.  Wherever there is an open, running, unsettled account on one side, and money or any article of personal property is either paid or delivered to be credited on the other side of the account, I am of the opinion that this is, within the reason and purview of the statute, " a mutual, open and current account," with " reciprocal demands between the parties."  But if I am not right

in this proposition, I feel perfectly clear that nothing in such case should be treated as payment but what is strictly so; that is, money. To attempt in such cases to make articles of merchandise payment, and to make it depend on the form of expression used when such articles are delivered, whether it shall be treated as payment or set-off, is to offer a premium for perjury and to make the rights of parties depend on technical distinctions that are raised by the Court and never entered into the views of those contracting.

But in this case the decision goes still further, and in my opin-ion is more mischievously technical than any of the reported cases. The plaintiff, who was the only witness, swears that defendant "has paid, and is entitled to be credited with, the following sums of money." Following this introduction, various sums of money are first mentioned, then follow several articles that are not money, among the rest a wagon. Finally, the witness says : " Making the whole amount for which the defendant is entitled to credit, $1,600." Here it will be perceived, the witness does not say *payment*, but *credit*.

Now it is true, that after enumerating the several sums of money it would have been more correct to have added : " And also the following items of personal property," before enumerating the wagon and other chattels mentioned in the credits on the account. But because he omitted to use this or some similar phraseology, I think it hardly fair to conclude that he meant to say a *wagon* was *money*—was a *hundred* dollars ; or that it was *paid* as a hundred dollars. He certainly does not pretend to say that at the time defendant delivered him the wagon there was any agreement it should be treated as *money*, or entered as a *payment*, rather than a credit, on defendant's account. Altogether, I think the plaintiff has lost his case, not because the law and the facts were against him, but because he was a bad grammarian, or rather loose and careless in his use of the English language.

Again, there was but one witness examined in this case. The plaintiff closed, and the Court, on motion, granted a nonsuit. Such are the facts as disclosed by a bill of exceptions. The judgment actually entered, recites that it was on full hearing of testimony on each side, and is in form a judgment on the merits, and

could be pleaded in bar to another action. Had it been entered as a judgment of *nonsuit*, it would have been no bar to another action. The plaintiff might have brought a new suit, and possibly by a diligent study of the English grammar for a few weeks, he might have so improved himself as not to lose his case the next time by the use of language which is made to mean something which in my opinion the plaintiff never meant to express. Something, indeed, which he would not be capable of understanding or appreciating, even after a learned lecture by an able member of the profession upon the nice distinctions between payment and credit. Having expressed my own views of this case, I will now notice some of the authorities bearing on the subject.

In *Ingram* v. *Shererd*, 17 Serg. & Rawles R. 347, it was held, than when the plaintiff sued on an account running about sixteen years, and showed a credit for $25 cash paid twelve or thirteen years before suit was brought, this did not take the case out of the statute which bars accounts after six years. In *Hay* v. *Kramer*, Watts & Serg. 137, it was held that when Kramer had been in the habit of selling hats to Hay, and Hay had made one payment in cash and had returned one hat, [probably for some defect in the manufacture] this was an account all on one side, and not a mutual account. The return of an article for unfitness is a different transaction from the sale or delivery of an article at a fixed price, or a price thereafter to be settled on account. Perhaps these two cases cannot be held as settling anything more than that a *technical cash payment* on account shall not be held to constitute an item in a mutual account.

In the case of *Lowber* v. *Smith*, 7 Barr, 381, Smith, who was plaintiff below, was a powder manufacturer, and was in the habit of purchasing saltpeter and brimstone from Lowber. Sometimes he paid cash, and sometimes powder for these materials. Sometimes he got the materials and worked them up into powder on the shares. The accounts run between the parties for several years. The last item was a lot of powder delivered by Smith, November 3d, 1836. Suit was brought November 1st, 1842, not quite six years after the last lot of powder was delivered. The last lot of powder having been delivered within six years, there was no

difficulty in Smith's recovering the value of that. But it would seem that Smith claimed more than the value of the last lot of powder ; he claimed that there was a balance due him from the other transactions between the parties. The Court below instructed the jury that this was a case of mutual accounts, and the last item being within six years, Smith could recover the entire bill due him on a settlement of all the accounts between him and Lowber. The Court above reversed the case, on the ground that the powder furnished by Smith was not sold to Lowber, but was paid by him on account. Now, when we take into consideration the fact, that at the time Smith delivered the powder he did not owe Lowber anything, but on the contrary, Lowber was in debt to him, this appears to me an extraordinary decision.

Smith did not sell the powder ; he did not deliver it as on ordinary account between merchant and manufacturer, but he paid it on a debt he did not owe.

It appears to me this decision is so unreasonable, that it is not entitled to any weight as an authority. Yet this is the only decision I can find where it has been distinctly held that the *payment* of an article of merchandise on account does not constitute an item of mutual account.

In the case of *Weatherwax* v. *Cosumnes Valley Mill Co.*, (17 Cal. 344) a gold bar was delivered to defendants to be sent to the Mint, and when the proceeds were returned in coin, this coin was to be credited to defendants. This the Court held to be the same as if the coin had been paid originally on the account. It was a simple case of technical payment in money. The Court in effect, held that a payment in money on an account did not make a mutual account.

In the case of *Norton et al.* v. *Larco et al.*, (30 Cal. 126) the Supreme Court of the State of California admit the general proposition that *payment* of money or merchandise on account does not make a mutual account so as to take a case out of the statute, but at the same time held that the *delivery* of an article of merchandise to be credited on account at a stipulated price does make an item of mutual account. The difference between *delivering* a piece of personal property to be credited on an account at a stipulated

price, and the *payment* of the same piece of property to be credited on account is so little, or my obtuseness is so great, that I am wholly unable to comprehend it.

Technically, nothing but money can be given in payment. Substantially there is no difference between giving a creditor a piece of property and saying *credit* this on my account, or enter this as *payment* on my account.

The case of *Penniman v. Rotch*, 3 Met. (Mass.) I think clearly sustains my views in this case. In that case the plaintiff sued on an account running through several years. A part of the items were within six years but most of them of older date. The question at the trial was whether those of longer standing than six years were bound by the Statute of Limitations. To take the case out of the statute, the plaintiff proved two items of credit, or payment made by the defendant during the running of the account. Neither of these items of credit, it is to be observed, were within six years of the time when the action was brought. One of these items was cash $17.60 for beef, the other one, calf $4.20. The $17.60 was paid under the following circumstances: Plaintiff, during the running of the account, sold a certain quantity of beef, (amounting to $17.60 in value) to defendant to be paid for in *cash*. The beef was taken away, and the cash not paid at the very time of taking it off, but was paid shortly after.

The beef in the mean time had been charged, and when the money was paid it was credited. The Court in commenting on this credit expresses some doubt as to whether it can be considered an item in a *mutual, open current account*, not because of its being *money* or because of its being a *payment* on account, but because it seemed rather to be a payment on what was considered a cash transaction. The Court seemed to doubt whether the beef and this $17.60 ought not to be treated as a separate transaction, neither the beef nor money constituting properly any part of the open, current account between the parties. But the Court seem to entertain no doubt but that this $17.60 would have taken the whole account out of the statute if the money had been paid generally on account instead of being paid particularly for the beef, which by agreement was to be a cash transaction.

The Court, however, held that the credit of $4.20 for the *calf* *took* the whole account out of the operation of the Statute of Limitations. The Massachusetts statute, on which this case was decided, reads as follows :

" In all actions of debt or assumpsit brought to recover the balance due upon a mutual and open account, the cause of action shall be deemed to have accrued at the time of the last item proved in such account." The language of this statute differs from ours, but I do not see any difference in substance.

I am of opinion the judgment should be reversed.