JOHN W. MILLER

*v.*

MARY A. CINNAMON.

*Opinion filed November 1, 1897.*

1. CONTRACTS—*when employment will be treated as a hiring by the year.* An employment generally, fixing no term of service, which continues for several years, will be treated as a hiring by the year.

2. LIMITATIONS—*when recovery for wages is limited to claims accruing within five years.* Pleading the Statute of Limitations in a suit on an oral contract to recover wages for services covering a long period, limits the recovery to wages earned within five years prior to the beginning of the suit, in the absence of circumstances removing the statutory bar.

3. SAME—*instructions—court cannot ignore issues raised by plea of the statute.* The court is bound to take notice of the issue raised under

the plea of the Statute of Limitations, and it is error to give a series of instructions which wholly ignore such issue.

4. SAME—*when part payment will not remove bar.* The mere payment by a debtor owing an account, of a sum not more than sufficient to cover recent items, is not sufficient to remove the bar of the statute from items of older date, without evidence of the debtor's intention to apply such payments to that purpose.

5. SAME—*mere charge on one side and credits of payment do not make a "mutual account."* To render an account mutual there must be an alternate course of dealing between the parties giving rise to cross-demands upon which they might, respectively, maintain actions.

6. SAME—*what facts do not render an account mutual.* The giving of clothing and of money to buy clothing by an employer to his employee, from time to time, will not of itself render the account between them a mutual account, consisting of reciprocal demands.

7. SAME—*whether debtor's statements amount to "new promise" is for the jury.* Whether statements made by a debtor do or do not amount to a new promise to pay a debt barred by the Statute of Limitations is to be determined by the jury, under proper instructions.

*Miller* v. *Cinnamon,* 61 Ill. App. 429, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is an action in assumpsit, commenced on January 30, 1893, by the appellee against the appellant. The declaration consists of the common counts only, to which the plea of general issue was filed. Afterwards, on January 2, 1895, appellee, after rule upon her to file a more specific bill of particulars, filed the following bill of particulars: "To services rendered by the plaintiff on the farm of defendant from August 1, 1882, to March 30, 1892, at $5.00 per week." Leave was then granted to defendant below, the appellant here, to file a second plea instanter.

Thereupon the appellant filed a plea, setting up the Statute of Limitations, that the cause of action did not accrue to the plaintiff at any time within five years next before the commencement of this suit. To this plea the

plaintiff below, the appellee here, filed two replications, first, that the cause of action did accrue to her within five years next before the commencement of this suit; second, that the defendant, within five years before the commencement of the suit, promised the plaintiff to pay the several sums of money named in the declaration. To the second replication defendant filed a rejoinder, that he did not, within the five years before the commencement of the suit, promise the plaintiff to pay her the several sums of money mentioned in the declaration.

The case was tried before the court and a jury, and resulted in verdict and judgment for the plaintiff. The judgment, so entered by the trial court, has been affirmed by the Appellate Court, and the present appeal is from such judgment of affirmance.

The evidence shows substantially the following facts, in relation to the nature of the cause of action, to-wit:

Appellant is the brother of the appellee. Appellant was a farmer living in Will county. His father, Robert Miller, died in July, 1882. His mother, Eliza Miller, died May 27, 1883, on the farm on which appellant lived. Appellant had two sisters, Mary A. Miller, now Mary A. Cinnamon, and Sarah A. Miller, now Sarah A. Adams. These two sisters, after the death of their father and mother, continued to live on the farm with appellant, until the times of their respective marriages. Sarah was married to Myron J. Adams on February 5, 1890. Mary, the appellee, was married to one Cinnamon on March 30, 1892. A suit is pending, brought by Sarah A. Adams against the appellant for similar services to those for which the appellee claims compensation.

The two sisters of appellant, who seems to have been an unmarried man, lived with him on his farm, and kept house for him, doing the housework, and sometimes milking the cows, and feeding the hogs, and watering the stock, and churning butter, and taking care of the creamery, and doing other work upon the farm for their brother.

After the marriage of Sarah to Adams in February, 1890, the appellee continued to do the housework and general housekeeping for her brother up to the time of her marriage on March 30, 1892. This suit is brought by appellee to recover for the value of her services in thus doing housework for her brother. He claims, that he never agreed to pay the appellee anything for her services, but that she was his sister, and he gave her a home, and she lived with him as a member of his family, and that he furnished her with whatever clothing she needed. She claims, that, two or three weeks after their mother's death in 1883, appellant told her and her sister, that, if they would stay with him until he paid his debts, he would sell off stock enough to pay them what he owed them and for the work they did for him.

HILL, HAVEN & HILL, for appellant:

To remove the bar of the statute the plaintiff must prove an express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is unpaid. *Parsons v. Coal and Iron Co.* 38 Ill. 433; *Carroll* v. *Forsyth,* 69 id. 127; *Wachter* v. *Albee,* 80 id. 596; *Collar* v. *Patterson,* 137 id. 403.

It is not sufficient that the debtor admits the correctness of the account, or that he has received the goods or the money, or had executed the note sued on. *Ayers* v. *Richards,* 12 Ill. 147; *Keener* v. *Crull,* 19 id. 189; *Wachter* v. *Albee,* 80 id. 47; *Norton* v. *Colby,* 52 id. 198.

There must be an actual affirmative intention on the part of the debtor to give the payment that application before a new promise can be inferred. *Lowery* v. *Gear,* 32 Ill. 382; *Drury* v. *Henderson,* 36 Ill. App. 521; *Kallenbach* v. *Dickinson,* 100 Ill. 427.

HALEY & O'DONNELL, for appellee:

The giving of articles of wearing apparel, and things of a like nature, will only be disregarded, on the question

of payment or mutuality of accounts, where no charge is made or claimed by a defendant against a plaintiff for the furnishing of such articles. *Thompson* v. *Reed*, 48 Ill. 118.

Where successive payments are made and applied, not by the creditor but by the debtor himself, of which he claims the benefit as payment in open court, having full knowledge of the dealings between himself and the creditor at the time he made, applied and charged such payments, they will be sufficient to take the case out of the statute. *Lowery* v. *Gear*, 32 Ill. 386; *Crum* v. *Higold*, 32 Ill. App. 282.

An affirmance of a judgment by the Appellate Court implies a finding of the facts in the same way they were found by the trial court, and such finding, under the statute, is conclusive upon this court as to the mutuality of accounts and all other questions of fact involved in this case. *Sconce* v. *Henderson*, 102 Ill. 376.

Where the Appellate Court does not expressly find the facts of a case in its final judgment, it will be deemed to have found them the same as did the trial court. *Brant* v. *Lill*, 96 Ill. 608; *Brownell* v. *Welch*, 91 id. 523; *Bank* v. *Proctor*, 98 id. 558.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The services, for which the appellee sues in this case, extended over a period of nearly ten years, to-wit: from August 1, 1882, to March 30, 1892. Whether or not there was a contract between appellee and appellant, that he would pay her for services, is a matter about which there is a conflict in the evidence, she asserting that there was such a contract and he denying it. But if there was such a contract, as is claimed by appellee, which was partly express and partly implied, it is not denied that the contract was a merely oral one. The appellant pleaded the Statute of Limitations. This plea, and the replications to it, and the rejoinder to the second replication, made

an issue as to whether there was a promise to pay the several sums of money claimed within the period of five years before the commencement of the suit.

The appellee was only entitled to recover for services rendered within five years prior to the date when the suit was brought, to-wit: on January 30, 1893, unless she could show some new promise on the part of appellant sufficient to take the case out of the Statute of Limitations. Where one is employed under a general agreement which fixes no term of service, and continues in service a long time, the hiring will be treated as a hiring by the year; and, in case of such long continued employment, the statute will ordinarily bar a claim for all outside of the five years immediately before the commencement of the action, unless there is evidence to take it out of the operation of the statute. (*Ennis* v. *Pullman Palace Car Co.* 165 Ill. 161). Where a son remained in the service of his father for more than twenty years after he became of age, and after the death of his father filed a claim for services against the latter's estate, it was held, that, the Statute of Limitations being pleaded, the son could only recover for his services for the five years next before bringing his claim, deducting the time that elapsed between the death of his father and the day fixed by the administrator for the adjustment of claims against the estate. (*Freeman* v. *Freeman*, 65 Ill. 106).

Such being the law in regard to the Statute of Limitations, and such being one of the issues formed by the plea of the Statute of Limitations and the replications and rejoinder thereto, the appellant upon the trial below asked the court for certain instructions in relation to such issue so formed. By such instructions the court was asked to say to the jury, that, by the law of this State, suit on a contract not in writing, express or implied, for the payment of wages for services rendered must be commenced within five years next after the cause of action accrued to the plaintiff; and that, when the plea of the

Statute of Limitations is interposed in such suit, then if the jury believe from the evidence, that any portion of the services sued for by the plaintiff was rendered by the plaintiff more than five years before the commencement of the suit, the jury should find for the defendant as to such portion so accruing more than five years before the beginning of the suit. These instructions asked by the defendant told the jury, that, if they believed from the evidence in this case, that the plaintiff rendered services for the defendant more than five years before the beginning of this suit on January 30, 1893, and that since that time there had been no new promise or express promise on the part of defendant to pay for such services, or any unqualified admission by him that the debt therefor was due and unpaid, the plaintiff could not recover for such services rendered more than five years before the beginning of the suit. The instructions so asked by the defendant were refused by the court; the plaintiff below asked no instructions whatever bearing upon the issue formed by the plea of the Statute of Limitations and the replications and rejoinder thereto. The jury received no instructions whatever upon that issue. On the contrary, the court gave for the plaintiff the following instructions, to-wit:

1. "If you believe from the evidence, that the plaintiff worked for defendant from 1883 to 1892 on a farm, under an arrangement and understanding between them that she was to be paid what her services were reasonably worth, and that during that time defendant from time to time furnished plaintiff on request sums of money to purchase clothing and for other purposes, then in law such an agreement would entitle the plaintiff to recover the reasonable value of her services less the amount furnished her for clothing and other expenses and purposes; and the fact, that there was no price agreed upon for her services, would not alone prevent a recovery on her part.

2. "The plaintiff, Mary A. Cinnamon, seeks to recover from the defendant for the value of services claimed by

her to have been rendered to the defendant, and you are instructed, that, if you believe from the evidence the plaintiff performed for the defendant services upon an agreement with him that she was to be paid what her services were reasonably worth, then in law she would be entitled to recover the reasonable value of such services, as shown by the evidence, less what she has received; and the fact that no price was agreed upon to be paid would not prevent a recovery."

The court below erred in thus ignoring the defense of the Statute of Limitations by refusing the instructions asked upon that subject by the appellant, and giving the instructions above referred to for the appellee. The latter instructions as above quoted placed no limitation upon the plaintiff's right of recovery for the entire length of time covered by her bill of particulars. The court was bound to take notice that the question made by the plea of the Statute of Limitations was in the case. Only a part of the issues of fact made by the pleadings was submitted to the jury. (*International Bank* v. *Bartalott*, 11 Ill. App. 620).

There was some evidence in the case to the effect, that upon the night when appellee was married the appellant said to their uncle, that he would settle with the sisters as soon as he made certain collections, but that he did not have the money at that time to pay them. It appears, that, at this time, the appellee and her sister held notes, given to them by appellant for the purchase of certain stock and other personal property, which they had inherited from their mother. He claims, that his promise to so settle with them had reference to the payment of the notes, which they thus held against him, and not to the payment of any wages due from him to them for services rendered. His statement in regard to the matter would appear to receive some endorsement from the fact, that shortly thereafter they filed a bill against him for the purpose of obtaining from him an accounting

with reference to the personal property, which had thus belonged to their mother. This bill was dismissed shortly after it was filed. But whether statements, thus made by the appellant in 1892, do or do not amount to a new promise to pay for the services which had accrued prior to January 30, 1888, it should have been left to the jury to determine, under the instructions asked by appellant, whether there was such new promise or not.

Appellant furnished the appellee from time to time, while she lived with him, with clothing, shoes, stockings, hats and other supplies or necessaries, and paid dentists' and doctors' bills contracted by her, and permitted her to obtain such supplies from a store in the village near his farm, and charge the same to him. The articles thus charged to him he paid for. It is claimed on behalf of the appellee, that the furnishing of these articles of clothing and other supplies, and the furnishing of the money to buy them from time to time, were payments upon the amount due for services, which operated to take the case out of the bar of the statute. Wherever such payments so operate to take a case out of the bar of the statute it is upon the ground that they amount to admissions that the debt is due. A new promise will not be inferred from a payment, unless there is an actual affirmative intention on the part of the debtor to make a payment upon the debt claimed to be due. There must be an intention on the part of the debtor to waive the bar of the statute. (*Lowery* v. *Gear*, 32 Ill. 382; *Kallenbach* v. *Dickinson*, 100 id. 427). It should have been left to the jury to say, whether or not any payments were made with such intention as would constitute, or amount to, a new promise. (*Mellick* v. *DeSeelhorst*, Breese, 221; *Ennis* v. *Pullman Palace Car Co. supra*).

There was some evidence tending to show, that appellant furnished the appellee with clothing, and money to purchase clothing, within five years before the beginning of the present suit, but there is nothing in the evidence

to show, that such payments were intended to apply upon such of the claimed indebtedness as accrued before the beginning of the period of five years before the commencement of this suit. All the payments, made by appellant during five years before the beginning of the suit, would together amount to less than what is claimed by the appellee to be due her for services rendered, and work done, during such period of five years. *Non constat* that such payments, if intended to be payments at all, were not intended to be upon that portion of the indebtedness accruing within the five years, rather than upon the indebtedness which accrued before the beginning of the five years. A part payment of a debt will take it out of the statute, whether the payment is made in money or by goods and chattels; "it must, however, be certain, that the payment is made only as part of a larger debt; for, in the absence of conclusive testimony, it will not be deemed an admission of any more debt than it pays." (3 Parsons on Contracts, pp. 74, 75). The mere fact, that a debtor, who owes an account, pays a sum not more than sufficient to cover items of recent origin, without proof of an intention that such payment is to apply to items of older date barred by the Statute of Limitations, is not sufficient of itself to relieve such barred items from the operation of the statute. (*Crum* v. *Higold*, 32 Ill. App. 282).

It is claimed, however, on the part of the appellee, that there was here a case of mutual credits; and the doctrine is invoked, that, where there are mutual accounts between two persons, and there are some items, or any one item, within the period of limitation, the whole account will be taken out of the Statute of Limitations. (7 Wait's Actions and Defenses, p. 266; Angell on Limitations, secs. 143-149 incl.). We do not think that the evidence shows a case of mutual accounts. "The rule, that items within the period of limitation draw after them items beyond that period, is strictly confined to mutual accounts between two parties showing a reciprocity of

dealing. There must be a mutual or, as sometimes expressed, an alternate course of dealing, giving rise to cross-demands upon which the parties might respectively maintain actions. Where payments are made on account by one party for which credit is given by the other, it is an account without reciprocity and only on one side." (*Crum* v. *Higold, supra;* 16 Am. & Eng. Ency. of Law, 4; Angell on Limitations, secs. 148, 149). The payments of clothing and money made by appellant to the appelleé do not bring this case within the exception of mutual accounts. The proof is clear, that appellee never kept any account of moneys paid or supplies furnished to her by her brother, nor made any charges of any kind against her brother for services. There is no evidence, that appellant kept any account with or against his sister for clothing or other supplies furnished her, or for money paid to her, except that, during the last three years before her marriage, he made some memoranda as to certain amounts of money advanced to her. She swears that she was to receive payment for her services in addition to and over and above her support and expenses. Even where an article of personal property is delivered to the creditor with an understanding between him and the debtor that it shall apply as payment, the transaction would not constitute a mutual account consisting of reciprocal demands between them. (*Warren* v. *Sweeney,* 4 Nev. 101; *Thompson* v. *Reed,* 48 Ill. 118). "Mutual account" means something more than charges on one side and credits of payment on the other. Such accounts are made up of matters of set-off. There must be a mutual credit founded on a subsisting debt on the other side, or an express or implied agreement for a set-off of mutual debts. (*Prenatt* v. *Runyon,* 12 Ind. 174; Angell on Limitations, sec. 149). No such elements of set-off appear in this case.

But whether the case furnishes an instance of mutual accounts or not, the question as to whether there was such a mutual account running between the parties was

a question, which should have been submitted to the jury by the giving of the instructions asked for by appellant. The main ground, upon which the rule rests, that items within the period of limitation draw after them items beyond that period, is that every new item and credit in an account given by one party to the other is an admission that there are some unsettled accounts between them. In other words, the items within the five years are regarded, in case of a mutual account, as "an admission of an unsettled account, and equivalent to evidence of a new promise, which takes all the other items out of the statute." (7 Wait's Actions and Defenses, 266; Angell on Limitations, sec. 144). If the instructions asked by the appellant upon the subject of the Statute of Limitations had been given, then it would have been left to the jury to determine, whether there were any facts in the case, either relating to items in a mutual account or otherwise, which amounted to a new promise, sufficient to stop the running of the statute. (16 Am. & Eng. Ency. of Law, p. 5, note 2; *Becker* v. *Jones*, 37 Hun, 35; Angell on Limitations, sec. 144.) In ordinary cases of mutual dealings the obligation is to pay the *balance* of the general account, but it must appear that each new item of credit is paid by the defendant with a view to lessen such balance; otherwise it is not equivalent to a new promise to pay what remains. (*Abbott* v. *Keith*, 11 Vt. 525).

For the error in giving and refusing instructions as hereinbefore stated, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Will county for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE CARTWRIGHT took no part.