JAMES HUNTER v. IRA KITTREDGE'S ESTATE.

*Book Account. Evidence. Statute of Limitations.*

Under section 24 of chapter 36 of the General Statutes, a surviving party in an action of book account is a competent witness in his own favor, so far as to prove in whose handwriting his charges are, and when made, and no further. He is not a competent witness to testify generally in relation to the items of his account.

Where the party living is a competent witness, in an action on book account, any further than to prove in whose handwriting his charges are, and when made, it is not because his action is book account, but it is because the subject matter of his action comes within the excepted cases mentioned in the first proviso in said section. The meaning of the statute is the same as if the excepted cases mentioned in the first proviso were also inserted in the second.

The fact that charges stand upon a book and the book is proved, does not necessarily bind the auditor to treat the book as *prima facie* evidence that the charges upon it are true.

Proof of the handwriting of the charges, and when made, tends to prove the book, and the book when proved is evidence tending to prove the charges thereon, and it is to be weighed as evidence, and such weight given it as the auditor may think it entitled to.

In order to justify an auditor in allowing any disputed charge, he should find *as matter of fact*, from a fair balance of proof, that the charge is correct, and that the person against whom the charge stands is still indebted for the same.

It is well settled law in this state that an unqualified acknowledgment of a debt barred by the statute of limitations, as unpaid and still subsisting, unaccompanied by any unwillingness to pay it, is evidence from which a new promise may be inferred.

An unqualified promise to settle book accounts, barred by the statute of limitations, is a direct admission of unsettled accounts existing between the parties at the time of such admission, and such promise to settle accounts when unaccompanied by any unwillingness to pay the balance, if any, implies a promise to pay whatever balance should upon such settlement be found due.

The question as to what claims the defendant intended to embrace in his promise or agreement "to settle accounts," is for the auditor to determine from the evidence on this point.

BOOK ACCOUNT. An appeal having been taken from the decision of the commissioners upon the plaintiff's claim against the estate of Ira Kittredge, the plaintiff filed in the county court a declaration on book. Judgment to account was rendered and the case referred to an auditor, who reported a balance due the plaintiff to balance book accounts between the parties, subject to questions of law raised by the parties. The plaintiff's counsel offered James Hunter, the plaintiff, as a witness, who testified that the charges on the plaintiff's book were in the handwriting of the plaintiff's son, and made by the plaintiff's direction, at or about the time they purport to have been made, and also testified

generally in relation to his account; to this the defendant objected, and the objection being overruled the defendant excepted. The defendant requested the auditor upon this point to hold that all testimony of the plaintiff, except in relation to the time of the charges and their correctness at the time, should be laid out of the case.

The finding of the auditor with respect to the weight which he gave to the proof as to the handwriting of the charges, and when made, and the objection thereto, is fully stated in the opinion.

The defendant also claimed that the plaintiff's account was barred by the statute of limitations. The question was submitted by the auditor to the decision of the court upon the facts set forth in the opinion. At the June term, 1867, the court, STEELE, J., presiding, without hearing, rendered judgment *pro forma* for the plaintiff. Exceptions by the defendant.

*Bliss N. Davis*, for the defendant.

*George C. & George W. Cahoon* and *Thomas Bartlett*, for the plaintiff.

The opinion of the court was delivered by

WILSON, J. I. The plaintiff was a competent witness in his own favor " so far as to prove in whose handwriting his charges are, and when made, and no further." Gen. Sts., ch. 36, § 24. It is claimed by the plaintiff's counsel that the statute above referred to, as interpreted by the court in the case of *Thrall & Smith* v. *Seward, admr.*, 37 Vt., 573, allows the surviving party to be a witness generally in all actions of book account. In that case the court say : " It can hardly be supposed that the legislature, by this recent statute extending the right to parties in other actions to testify, intended to restrict the right in actions of book account to more narrow limits than in other actions. We think, taking the whole section together, the intention was to give a party the same right to testify in actions of book account, and where the matter at issue and on trial is proper matter of book account, as in other actions, and in addition, the

right to testify to the handwriting of his charges, and when made."
The remarks of the learned judge in that case, that *the intention
was to give a party the same right to testify in actions on book ac-
count as in other actions*, have reference to the cases excepted from
the first restrictive proviso in said section, where the party in
other actions may testify. The first restrictive provision in that
section is as follows: " Provided that in all actions, except ac-
tions on book account, where one of the original parties to the
contract or cause of action in issue and on trial is dead, or is
shown to the court to be insane, the other party shall not be
admitted to testify in his own favor; and where an executor or
administrator is a party, the other party shall not be admitted to
testify in his own favor, *unless the contract in issue was originally
made with a person who is living and competent to testify, except as
to such acts and contracts as have been done or made since the pro-
bate of the will, or the appointment of the administrator.*" In the
above italicized portion of that section, it will be seen that the
excepted cases mentioned in the first proviso are, first, where the
contract in issue was originally made with a person who is living
and competent to testify; second, such acts and contracts as have
been done or made since the probate of the will or the appoint-
ment of the administrator. As to either of the matters embraced
in the above excepted cases, the party may be admitted to testify;
and in them his right to testify does not depend upon the form of
action, but to the extent of the matter thus excepted the party
has the same right to testify in the action on book account as in
other actions. The subject matter of the suit is not within either
of the excepted cases mentioned in the first proviso of that sec-
tion, consequently, if the action were assumpsit, or any other than
book account, it would not be competent for the plaintiff to testify
at all in the suit. The action on book account is excepted from
the first proviso in said section, but the right of the party living,
to testify in the action on book account, is restricted by the second
proviso in said section, in the following words: " Provided, fur-
ther, that in actions of book account, and where the matter at
issue and on trial is proper matter of book account, the party
living may be a witness in his own favor so far as to prove in

whose handwriting his charges are, and when made, and no further." By this restrictive provision, if construed literally, the party living would not be entitled, in the action on book account, to the benefit of the exceptions from the exclusion named in the first proviso, and could only testify to the extent named in the second. But in *Thrall & Smith* v. *Seward, admr., supra,* and in *Johnson, admr.,* v. *Dexter,* 37 Vt., 641, it was held that, taking the whole statute together, with the history of the legislation on this point, " the true intent and meaning was, not to exclude parties on book from testifying in the excepted cases mentioned in the first proviso, but to allow them that right, and the further right to testify to their own charges as stated in the second proviso." It will be observed that where the party living is a competent witness, in an action on book account, any further than to prove in whose handwriting his charges are, and when made, it is not because his action is book account, but it is because the subject matter of his action comes within the excepted cases mentioned in the first proviso. The meaning of the statute is the same as if the excepted cases mentioned in the first proviso were also inserted in the second.

II. It is objected by the defendant's counsel that the auditor decided, as matter of law, that proof of the handwriting of the charges, and when made, is *prima facie* evidence of their correctness and of a subsisting indebtedness by reason thereof sufficient to throw the burden of proof on the estate to rebut it ; and that the findings of the auditor result from the application of the above rule in adjusting the accounts. Upon this point the auditor says : " The most of the plaintiff's charges must stand or fall upon the question how far his book and entries are evidence of their validity. I have supposed the intention of the legislature in the recent statute on this subject was to place the living party's book on the same ground as that of the deceased party, that is, to be received as evidence *prima facie* of the delivery of articles and rendering the services as charged, as I am unable to perceive what books and entries can amount to at all as evidence, unless they go to that extent, subject, of course, to be impeached and contradicted by other evidence ; and I have settled the case on that principle."

The auditor adds: "I considered the entries in the book regularly kept and at the time as *prima facie* evidence of their original correctness. That there was no proof whatever outside the plaintiff's testimony except the entries themselves, and I considered that the entry, the charge, was proof of having rendered the services, it being shown that the entry was made at the time it purports and by direction of the plaintiff, and there being no evidence to contradict the fact of the labor being performed." It is apparent that the auditor tried the case on the assumption, as matter of law, that the book in the case proved to the extent the statute allowed the plaintiff to testify, was *prima facie* evidence of the debt, unless overthrown by other testimony. In that ruling we think the auditor was wrong. If we were to concede, as suggested by the auditor, that the intention of the legislature, in the recent statute restricting the right of the party living to testify, was to place his book on the same ground as that of the deceased party as to its force or weight as evidence, it would not sustain the principle on which the auditor tried the case; for the trier would not be bound, as matter of law, to treat the book and charges thereon of the deceased party as *prima facie* evidence of their original correctness, unless he found, as matter of fact, from the book or other evidence, that the charges were truthfully made. If the trier would be bound, as matter of law, to treat the book, when proved, as *prima facie* evidence of the original correctness of the charges thereon, the same principle would compel him, in very many cases, to allow claims without any satisfactory evidence to support them. The evil consequences of the principle that would bind the trier, as matter of law, to treat books of accounts, with proof only of the handwriting of the charges and when made, as *prima facie* evidence of their correctness, may be illustrated by reference to the nature of such evidence, the tests of its truth, and its insufficiency in many cases to satisfy the trier that the charges ever had any foundation in truth. A book of accounts kept in the regular course of business, in which entries are made of transactions creating an indebtedness, such as the sale of personal property, loan of money, or services rendered, is original evidence. But the credit of account books, or the weight

they are entitled to as evidence of any disputed item of charge, depends upon their being a daily record of the business transactions of the party who produces them; of the entries being made cotemporaneously with the transaction of the business, or as nearly so as the circumstances would allow; of their appearing to be kept so that the entries are made in the order of time, free from erasures, alterations or other signs of fraud; and the most important of all, in being honestly and fairly kept, and founded in truth. The book upon its face may appear regular and correct, and yet every charge on it be false. When a suit is brought and tried in the lifetime of both parties, they may testify to every material fact in relation to their accounts proper to be considered in deciding upon the merits of their respective claims. They have, or are supposed to have, personal knowledge of the truth or falsity of the several charges and claims presented against each other, in relation to which each party is admitted to testify in his own favor against the other, and may be able to prove, by his own testimony, that the items of charge in the book of his adversary never had any foundation in truth, notwithstanding his book appears regular and fair upon its face. In most actions on book account the parties are the only persons having personal knowledge of the merits of their respective claims; therefore, in the absence of the testimony of the party against whom it is alleged a false charge is made, the proof of its falsity is generally by circumstances. In the present case one of the parties to the contract in issue and on trial is dead; but the same questions as to the validity of the claims may arise as if both parties were living. The adjustment of those claims may, to some extent, depend on evidence of a different nature or from a different source from that which would be expected if both parties were living, yet the same end is to be sought for, and the same measure of proof required. Death is silent; the intestate, therefore, can not testify. The plaintiff, under the statute, was admitted to testify so far as to prove in whose handwriting his charges are, and when made. He has given evidence to show that his charges are in the handwriting of his son, made by direction of the plaintiff, at or about the time they purport to have been made. The auditor

finds the handwriting of the plaintiff's charges proved, and that they were made at or about the time of their respective dates; that is, he finds the handwriting of the charges, and when made, proved to the extent the party living is admitted to testify, and finds the book is regular on its face; and thus far he finds the plaintiff's book proved. All this might or might not fall short of such evidence as the auditor would require to support the alleged claims. The important matter or question to be determined lies back of proof of the handwriting of the charges, and when made, and the appearance of the book; that is, whether the property was sold and delivered, the money loaned, or the services rendered to or for the defendant, as charged in the plaintiff's book. The plaintiff has proved that he made such charges on his book, and when they were made. His proof of the handwriting of his charges and when made tends to prove his book, and whatever further proof might be required to support his book and the charges thereon, must be by common law evidence. The book, when proved, is evidence tending to prove the charges thereon, and it is to be weighed as evidence, and such weight given as the auditor may think it entitled to. Whether, upon the facts proved, the auditor might legitimately find that the charges on the plaintiff's book are supported, is a matter addressed to the judgment of the auditor whose province it is to find such facts as the evidence will warrant. But the fact that charges stand upon the book and the book is proved, does not necessarily bind the auditor to treat the book as *prima facie* evidence that the charges upon it are true. In order to justify the auditor in allowing any disputed charge, he should find, *as matter of fact*, that the charge is correct, and that the defendant is still indebted for the same; and the auditor would not be justified in allowing any disputed charge upon proof of the book, unless he is also satisfied from such proof or other proof that the defendant had the property or services so charged to him; and of this the auditor should be convinced by a fair balance of the evidence.

III. The only remaining question is, whether the plaintiff's account is taken out of the operation of the statute of limitations by the facts found and reported by the auditor. The substance

of the facts stated in the report on this point is as follows, viz.:
Kittredge died in September, 1864, and the auditor does not find
that Kittredge made any express promise to pay the plaintiff's de-
mands or any part thereof, within six years next before the de-
cease of said Kittredge. But the auditor does find that several
times within said six years said Kittredge agreed to settle the
accounts between him and the plaintiff, but neglected it. But on
these occasions he expressed neither any unwillingness nor will-
ingness to pay any balance that might be found on settlement. In
the summer of 1861 said Kittredge called at the plaintiff's house
with his account book, and told the plaintiff he had come to settle
accounts. The plaintiff being at breakfast, Kittredge said he
would go to his son George's (near by) and would settle when he
came back, but he did not call. In 1862 the plaintiff sent to said
Kittredge, by the plaintiff's son, to have Kittredge come to the
plaintiff's house and settle accounts. Kittredge then told the
plaintiff's son that he could not attend to it on that day, but
would come soon and settle. The plaintiff's account commenced
in May, 1848, and the last item of his account was December,
1861. In 1857 said Kittredge signed a bank note as surety for
the plaintiff, and paid it for him, amounting to $201. The plaintiff
at that time turned out to said Kittredge a note against one Al-
drich for $90, a town order for $50, and also furnished him other
means with which to pay said bank note, all of which were put
into the running account by the plaintiff.

The main question is, whether upon the facts of this case there
was such an acknowledgment of these demands by the defendant
as will justify the inference of a promise to pay them. In *Phelps*
v. *Stewart & Wood,* 12 Vt., 256, it was held that, to prevent the
operation of the statute of limitations, there must be an acknowl-
edgment of the debt as still due, with an apparent willingness to
remain liable for it, or at least without an avowed intention to the
contrary. It was there held that an unqualified acknowledgment
of a debt, barred by the statute of limitations, as unpaid and
still subsisting, is evidence from which a new promise may be in-
ferred. In *Blake & Hart* v. *Parleman,* 13 Vt., 574, the rule laid
down in *Phelps* v. *Stewart et al.,* is recognized and approved.

BENNETT, J., in delivering the opinion of the court in *Blake &
Hart* v. *Parleman*, says: " The principle to be deduced from
the cases on this subject, both English and American, is that, in
addition to the admission of a present subsisting debt, there must
be either an express promise to pay, or circumstances from which
an implied promise may fairly be presumed." In that case the
defendant requested one Williams to call upon the plaintiffs and
settle his (defendant's) account with them, saying that he thought.
he had more than paid them. In pursuance of said request said
Williams called at the plaintiffs' store and conversed with one
of the plaintiffs and made known the request of the defendant,
but did not settle. Again, in conversation between the defendant
and said Williams, the defendant told him the plaintiffs' account
was not settled. It was held that these acknowledgments were
sufficient to take the case out of the statute of limitations.

In *Moore* v. *Stevens*, 33 Vt., 308, KELLOGG, J., says: "The
case of *Phelps* v. *Stewart et al.*, 12 Vt., 256, is the leading case
in this state in regard to the character and sufficiency of acknowl-
edgments relied on to defeat the statute, and it has been repeat-
edly recognized and approved by this court." It was there held
that an acknowledgment, to take a debt out of the statute of limi-
tations, must be of such a nature that a promise to pay the debt
can be implied from it; but when the admission is accompanied
by a denial of liability existing at the time of the admission, no
promise to pay the debt can be implied.

In *Brewin et ux.* v. *Estate of Farrell*, 39 Vt., 206, the plaint-
iffs' testimony tended to prove that in 1859, Farrell applied to
a neighbor for a loan of $200, saying that he desired to use it for
the purpose of paying his sister Bridget for some cows and a
horse. The plaintiffs' claim, in that suit, was for said property.
The court instructed the jury that, under the plea of the statute
of limitations, " they must, in order to render a verdict for the
plaintiffs, find a distinct, unqualified acknowledgment, unaccom-
panied with any unwillingness on the part of Farrell to pay the
plaintiffs for this property, within six years prior to Farrell's
decease and prior to the first day of August, 1863." It was held
that these instructions were correct. BARRETT, J., in delivering:

the opinion of the court in that case, says: "The proposition of law, embodied in the instructions, was announced by ROYCE, J., in delivering the opinion of the court in *Phelps* v. *Stewart et al*, 12 Vt., 264, and it has been recognized and adopted as a formulary, expressing the true principle and rule, ever since. The efficacy of such acknowledgment rests in the fact that from such acknowledgment arises the implication of a promise to pay. If such implication is rebutted by any thing accompanying the acknowledgment, of course it could not prevail. And this is the idea developed by BENNETT, J., in *Blake & Hart* v. *Parleman*, 13 Vt., 574, above cited. In *Bell* v. *Morrison*, 1 Peters, 351, STORY, J., says: "If there be no express promise, and a promise is to be raised by implication of law, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay." It has been repeatedly decided that the acknowledgment need not be made to the creditor himself, or even to his agent or servant. *Whitney* v. *Bigelow* 4 Pick., 110; *Holliday* v. *Ward*, 3 Camp, 32; *Blake & Hart* v. *Parleman*, 13 Vt., 574; *Brewin et ux.* v. *Estate of Farrell*, 39 Vt., 206. We may regard it as settled law in this state that an unqualified acknowledgment of a debt, barred by the statute of limitations, as unpaid and still subsisting, unaccompanied by any unwillingness to pay it, is evidence from which a new promise may be inferred. From the above rule, we deduce the following proposition, viz., that an unqualified promise to settle book accounts, barred by the statute of limitations, is a direct admission of unsettled accounts existing between the parties at the time of such admission, and such promise to settle accounts when unaccompanied by any unwillingness to pay the balance, if any, *implies a promise* to pay whatever balance should, upon such settlement, be found due. Applying this principle to the facts of this case, it is clear that if the auditor found an unqualified promise to settle the accounts, unaccompanied by any unwillingness to pay, and found that the accounts were unsettled at the time the defendant's promise to settle them was made, he could, from these findings, and as a legitimate consequence thereof, also find an *implied promise* to pay whatever balance should be found

due on the accounts to which the defendant's promise to settle accounts related. The auditor says: "The defendant expressed neither any unwillingness nor willingness to pay any balance." From this finding it would seem that the promise to "settle accounts" was unaccompanied by any unwillingness to pay. The question as to what claims the defendant intended to embrace in his promise or agreement "to settle accounts," is for the auditor to determine from the fair import of the defendant's language in view of the evidence as to the nature of their dealings, and the light in which the defendant viewed their respective claims at the time of his agreement to settle. What claims did the defendant understand he was requested to settle? What claims did the defendant, at the time of his promise, intend to settle? Did he intend, by his promise to "settle accounts," to include all matters properly chargeable on book account, or to settle such accounts only as arose from his having signed and paid a bank note for the plaintiff, and the plaintiff having furnished means for that purpose? The intended application of the defendant's promise to the demands covered by it, is for the auditor to determine and make from the evidence on this point. *Kimball* v. *Estate of Baxter*, 27 Vt., 628; *Brewin & wife* v. *Estate of Farrell*, 39 Vt., 206. The result is that the judgment of the county court is reversed and the cause is remanded for a new trial.