ALFRED ENNIS

*v.*

THE PULLMAN PALACE CAR COMPANY.

*Filed at Ottawa November 9, 1896—Rehearing denied March 3, 1897.*

1. LIMITATIONS—*when Statute of Limitations begins to run against claim of attorney for services.* Where an attorney is conducting a single suit, the Statute of Limitations will not begin to run against the claim for his fee until the suit is ended or his retainer terminated in some other manner.

2. SAME—*when running of statute is not postponed until the service is ended.* Where an attorney employed as counsel under a general agreement fixing no term of service is to be paid by the month, a right of action accrues for each month's salary upon the first day of the succeeding month, against which right the Statute of Limitations at once begins to run, although the service is continued several years.

165—11

3. SAME—*acknowledgment of barred debt must clearly raise implied promise to pay.* An acknowledgment of a debt barred by statute, in order to raise an implied promise to pay, must unqualifiedly admit the debt to be due and unpaid, nothing being then said or done to rebut the implication.

4. SAME—*what is not a sufficient acknowledgment of a barred debt.* The words "I will settle this thing," by an employer, even if construed with his former statements that his employee's salary was unadjusted, will not raise an implied promise to pay the claim, when the employee, during the period claimed for, was receiving a fixed sum each month and receipting for "all claims in full to date."

5. SAME—*effect upon running of statute of attempts at compromise.* A party should not trust so long to the anticipated outcome of negotiations for a settlement of his claim as to lose his legal remedy by lapse of time. (Language of *Railway Conductors' Ass.* v. *Loomis,* 142 Ill. 560, criticised.)

6. SAME—*when instruction concerning acknowledgment of barred debt is properly refused.* Where words attributed to a debtor as sufficient to remove the statutory bar from his debt are accompanied by circumstances repelling an inference of a promise to pay, an instruction which withholds such circumstances from the consideration of the jury is properly refused.

7. APPEALS AND ERRORS—*harmless error in instruction will not reverse.* A judgment will not be reversed for error in an instruction when it appears affirmatively that the defeated party was not injured thereby.

8. ACCORD AND SATISFACTION—*acceptance of part of a disputed claim "in full" discharges debt.* Where a party whose claim is unliquidated and in dispute accepts a part thereof and executes a receipt therefor "in full of all claims to date," such payment will be regarded as an accord and satisfaction.

9. SAME—*when question of accord and satisfaction is one of law.* Where the facts in respect to an accord and satisfaction between parties are ascertained, their effect is purely a question of law, and are not to be submitted to the jury.

10. EVIDENCE—*proof must be clear to impair force of written receipt.* Though a written receipt may be explained by parol, yet it is *prima facie* evidence of the most satisfactory character of the facts recited therein, and to impair its force the proof must be clear.

11. SAME—*written receipt retains its prima facie effect when contradictory evidence does not preponderate.* Where the proof offered to impair the force of an unambiguous written receipt is neutralized by the proof offered in its support, the receipt must be given its *prima facie* effect.

*Ennis* v. *Pullman Palace Car Co.* 60 Ill. App. 398, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is an action of assumpsit, commenced on September 30, 1893, by the appellant against the appellee company to recover for professional services as counsel and general counsel for appellee for about four years and five months.   The declaration contains only the common counts, and the plaintiff seeks to recover as on a *quantum meruit* for services from June 7, 1884, to the end of October, 1888.   The first plea was the general issue except as to $1000.00, the company pleading the tender of $1000.00, being the amount of two sums of $500.00 each tendered for the months of September and October, 1888.   The second plea was the Statute of Limitations of five years. There was replication to the plea of tender, and replication *de injuria* to the Statute of Limitations.   The trial was before a jury, and resulted in a verdict of $180.00 in favor of appellant.   Judgment was rendered upon the verdict.   Appeal was taken by appellant to the Appellate Court, and the latter court has affirmed the judgment of the circuit court.   The present appeal is prosecuted by the appellant from such judgment of affirmance.

The facts material to an understanding of the questions involved are substantially as follows:   Appellant is by profession a lawyer and acted as the legal counsel of appellee from June 7, 1884, to September 26, 1888, on which latter day he resigned his position as counsel, the resignation to take effect on October 1, 1888; he remained, however, in the service of appellee until October 31, 1888. Between June 7, 1884, and July 1, 1885, appellant drew on account of his services different amounts, ranging all the way from $200.00 to $500.00, and in one instance as much as $800.00.   For the amounts thus drawn vouchers or receipts were given to appellee, reciting that the

amounts so received were "on account" or "on account of services."

On July 1, 1885, appellant's old vouchers were surrendered and a new one taken, dated July 1, 1885, for $6300.00, itemized as stated in the opinion. The receipt dated July 1, 1885, for $6300.00, is hereinafter set out in full.

The appellee also introduced in evidence a receipt signed by the appellant for personal services rendered by him to the appellee as general counsel during the month of July, 1885, and containing the following words, to-wit: "Received from Pullman's Palace Car Company $500.00 in full for services as reported above and in full of all claims to date." It was also shown that he received appellee's check for $500.00 for such services during the month of July, 1885, which check was paid August 1, 1885. Appellee also introduced in evidence vouchers similar to the one for July, 1885, being one for each of the successive months from August, 1885, to July, 1888, inclusive, except the months of December, 1886, January, 1887, February, 1887, March, 1887, and April, 1888. The vouchers so introduced were thirty-one in number, and each of them was for $500.00, signed by appellant and in similar form, with proper change of date and months, as the voucher for July, 1885, set forth above. For the five months from December, 1886, to April, 1888, inclusive, the appellee introduced in evidence its five checks upon the Merchants' Loan and Trust Company for $500.00 each in favor of appellant, and endorsed by him, and dated each the first day of the month following the months last above named, respectively. Appellee also introduced a receipt signed by Alfred Ennis, dated September 1, 1888, for personal services rendered by him to appellee as general counsel during the month of August, 1888, for $500.00, and containing the same words as the receipt for July, 1885, as above quoted. It is shown, that the $500.00 named in this receipt was actually paid to appellant by appellee's check drawn on the Merchants' Loan and Trust

Company in favor of appellant and endorsed by him, and stamped on its face as paid on September 15, 1888.

Appellant now claims, that his services during said period from June, 1884, to October, 1888, inclusive, were worth from $15,000.00 to $20,000.00 a year; that his salary as general counsel for appellee was never fixed, and that the payments made to him at the rate of $300.00 for June, 1884, and $500.00 for each month after that during his service, were all "on account of," and not in full payment for his services. The object of the present suit is to recover the excess, which his services are claimed to have been worth for the period aforesaid, over and above the $500.00 per month, or $6000.00 per year, which he actually received, and for which he executed receipts as aforesaid.

Appellant claims, that the amount of salary, which he was to receive as appellee's legal counsel, was never really settled or agreed upon between himself and George M. Pullman, the president of the appellee company. He claims, that, at various times during the period of his service, he endeavored to induce Pullman to fix his salary, and that Pullman always said, at every interview which he had with him, that his salary should be fixed and made satisfactory, and dated back. He does not say, however, that any time was ever set, when his salary should be fixed or agreed upon. He says that Pullman always said to him, "I have always said to you that your salary should be fixed and dated back and be made all right." He states that this was said to him some time in September, 1888, before his resignation on the 26th day of that month. He also says that on November 7, 1888, after his resignation had taken effect, he had an interview with Pullman at his office in Chicago at two o'clock in the afternoon, and Pullman said he had an engagement at that time, but said to him: "Come back here at three o'clock and we will take up the matter of your salary and settle it," or "settle this thing;" that he went back at three o'clock, but Pullman never returned.

Pullman swears, that up to the first of July, 1885, he regarded appellant as being on trial, and authorized him to draw for his services sometimes $300.00 a month, and sometimes $400.00 a month, and sometimes $500.00 per month, during said period of thirteen months; but he swears, that in the early part of July, 1885, about a year after appellant came to him, he took up the question of his salary with him, and fixed the compensation at $500.00 per month, and dated it back twelve months to July of the previous year,—that is, 1884,—stipulating that the month of June, 1884, should go in at $300.00; that he assumed that that was satisfactory to appellant; that $500.00 per month was agreed upon; that appellant did not claim more than that; that, since the date of that agreement about the first of July, 1885, appellant has never claimed to him, that there was any unadjusted salary; that nothing was ever said about dating back after July, 1885; that from that time the question was settled; that the salary remained fixed at that sum for the balance of the service; that he never informed appellant in any way that he would grant an increase of salary; that there was no question of unadjusted salary in the spring of 1888 at his house.    Pullman also swears, that he heard a great deal from appellant during the year preceding July 1, 1885, about fixing his salary; that "we got together and fixed it," and that the voucher for $6300.00, dated July 1, 1885, was made out in accordance with the agreement; that appellant agreed with him that his compensation should be $500.00 a month.

It appears from the evidence, that, on October 17, 1889, appellant addressed to Pullman the following letter: "Referring to our last meeting for the purpose of settling the matter of my salary as general counsel of your company, I will now inquire as to when it will be agreeable to you to take up the further consideration of the same." To this letter Pullman sent the following reply, also dated October 17, 1889:    "Replying to yours of this date

I beg to say that I have had no meeting with you for the purpose of settling the question of salary, since it was fixed by agreement something more than four years ago, in accordance with which it has been settled monthly by payment and receipt. Upon inquiry of the secretary I find that the vouchers were duly audited in your favor and checks made out for your salary for the last two months of your service, and that you have been duly notified that the checks were ready for you. If you desire to see me, I will be happy to meet you here at any time when it will be convenient."

The vouchers above referred to for $6300.00, and for July, 1885, and for August, 1888, appear in the record in the following shape, to-wit:

"*Pullman's Palace Car Company,*
          *To Alfred Ennis, Dr.*—Address, Chicago.
For personal services as shown below,............188 .

| Nature of services rendered. | Time. Months. | Days. | Rate. | Amount. |
|---|---|---|---|---|
| General Counsel, Chicago....... | 1 | | $300 | $300 |
| ` ....... | | 12 | 500 | 6000 |

          June 1, 1884, to July 1, 1885..................... $6300
                                        W. W. Y.
Approved—GEO. M. PULLMAN, *President.*
     Examined and found correct.

     Received of Pullman's Palace Car Company $6300.00, in full for services as reported above, and in full of all claims to date.
     *July 1, 1885.*                          ALFRED ENNIS."

"*Pullman's Palace Car Company,*
          *To. A. Ennis, Dr.*—Address, Chicago.
For personal services during the month of July, 1885.

| Nature of services and where rendered. | Time. Months. | Days. | Rate. | Am't. |
|---|---|---|---|---|
| General Counsel, Chicago.............. | 1 | | | $500 |

     Examined and found correct.

     Received from Pullman's Palace Car Company $500.00, in full for services as reported above, and in full of all claims to date.
     *August 1, 1885.*                        ALFRED ENNIS."

"*Pullman's Palace Car Company,*

To *Alfred Ennis, Dr.*—Address, Chicago.

For personal services during the month of August, 1888.

Nature of services and where rendered.    Time.    Rate.    Am't.

Months.  Days.

General Counsel, Chicago...............1            $500.00

Examined and found correct.

Received of Pullman's Palace Car Company $500.00, in full for services reported above, and in full of all claims to date.

*September 1, 1888.*                    ALFRED ENNIS."

S. S. GREGORY, for appellant:

A hiring for an indefinite period is taken to be from year to year. *Davis* v. *Gorton,* 16 N. Y. 255.

Where payments are made they take the entire claim out of the statute, even where the court holds that it commences to run at the end of each year, and not when the service is terminated. *Smith* v. *Velie,* 60 N. Y. 106; *Demise* v. *Demise,* 110 N. Y. 562.

Negotiations and assurances of adjustment prevent the statute from running. *Railway Conductors' Ass.* v *Loomis,* 142 Ill. 560.

Unless there is a statute requiring an express promise, an acknowledgment of an existing indebtedness, unaccompanied by an expression of intention not to pay it, is sufficient to revive the debt or prevent the running of the statute. *Davis* v. *Steiner,* 14 Pa. St. 275; *Lord* v. *Harvey,* 3 Conn. 370; *Newlin* v. *Duncan,* 1 Harr. 204; *Thompson* v. *French,* 10 Yerg. 453; *Ross* v. *Ross,* 20 Ala. 105; *Williams* v. *Finney,* 16 Vt. 297; *Taylor* v. *Miller,* 113 N. C. 340; *Henry* v. *Root,* 33 N. Y. 526; *Custy* v. *Donlan,* 159 Mass. 245; *Wooters* v. *King,* 54 Ill. 343; *Ditch* v. *Vollhardt,* 82 id. 134; *Schmidt* v. *Pfau,* 114 id. 494.

Where the terms of an acknowledgment of a debt barred by the Statute of Limitations are ambiguous, their meaning and effect are questions for the jury. *Gould* v. *Shirley,* 2 M. & P. 581.

The jury is to draw the inferences as to intent of the party making an admission of a debt, where it is claimed to be thus revived. *Sidwell* v. *Mason,* 2 H. & N. 306; *Black's Exrs.* v. *Reybald,* 3 Harr. 528; *DeForest* v. *Hunt,* 8 Conn. 179.

A receipt is open to explanation. *Walrath* v. *Norton,* 10 Ill. 437; *Frink* v. *Bolton,* 15 id. 344; *Ditch* v. *Vollhardt,* 82 id. 134; *Rosenmueller* v. *Lampe,* 89 id. 212; *Neil* v. *Handley,* 116 id. 418; 1 Taylor on Evidence, sec. 859; 2 id. sec. 1134; 2 Wharton on Evidence, 1064; *Lee* v. *Railway Co.* 6 L. R. Ch. App. 527; *Railroad Co.* v. *Davis,* 35 Kan. 464; *Fire Ins. Ass.* v *Wickham,* 141 U. S. 564.

F. B. DANIELS, (WILLIAMS, HOLT & WHEELER, of counsel,) for appellee:

An indefinite hiring at so much per day, per month or per year is a hiring at will, and may be terminated by either party at any time. *Finger* v. *Koch,* 13 Mo. App. 311.

Claims for service are barred in the same manner as other debts, reckoning from the time when an action would lie. *Davis* v. *Gorton,* 16 N. Y. 255; *Taylor* v. *Sonora,* 17 Cal. 594; *Freeman* v. *Freeman,* 65 Ill. 106; *In re Gardner,* 103 N. Y. 555; *Mim's Exrs.* v. *Sturtevant,* 18 Ala. 366.

Several insufficient acknowledgments will not constitute a sufficient one. *Patterson* v. *Neuer,* 165 Pa. St. 74.

To remove the bar of the Statute of Limitations it is incumbent on the plaintiff to prove an express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay. It must be of such character as to clearly show a recognition of and intention to pay the debt. *Carroll* v. *Forsyth,* 69 Ill. 131; *Murphy* v. *Holway,* 25 Ill. App. 555.

The statute bars the claim of any attorney as it does the claims of other persons, when his services may be measured in a similar way as the services of others. *Mosgrove* v. *Golden,* 101 Pa. St. 605.

A judgment will not be reversed where error has intervened, if it shall appear from the whole record that such error could not reasonably affect the result. *Ochs* v. *People*, 124 Ill. 425.

All that is required to be a case of accord and satisfaction is an unliquidated demand, an agreement as to its amount, and a payment of that amount. Bishop on Contracts, sec. 56; 2 Greenleaf on Evidence, sec. 28; Bouvier's Law Dic. "Accord;" *Rosenmueller* v. *Lampe*, 89 Ill. 212; *Donohue* v. *Woodbury*, 6 Cush. 148; *McDaniels* v. *Bank*, 29 Vt. 230; *Stockton* v. *Fry*, 4 Gill, 406.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

By the eighth instruction given to the jury they were told, that, if they should find from the evidence in the case, that there was no contract or agreement between plaintiff and defendant as to the amount of plaintiff's compensation, then the plaintiff was entitled to recover for the months of September and October, 1888, whatever the evidence showed his services were fairly and reasonably worth, less any amounts that may have been paid on account of those months. The defendant below, appellee here, produced no vouchers signed by the plaintiff below, appellant here, for services during September and October, 1888. It appears, however, that appellee tendered to appellant two checks of $500.00 each for such services; but appellant declined to take the same or to sign vouchers for the same at the time of the tender. The sum of $1000.00, being the amount of these two checks, was paid into court, and subsequently withdrawn by appellant's attorney. In view of the giving of the eighth instruction, there is nothing of which appellant can justly complain as to the manner in which the question of his compensation for September and October, 1888, was presented to the jury. It is difficult to understand upon what theory the jury rendered a verdict in

favor of the appellant for $180.00.   He introduced testimony tending to show, that his services during the four years and five months of his employment were worth from $12,000.00 to $20,000.00 per year or from $1000.00 to over $1600.00 per month.   The appellee introduced no evidence as to the value of appellant's services, resting upon the defense that an agreement had been made with him to pay him $500.00 per month, and that he had been paid $500.00 per month for the whole time of his employment.   If the jury intended to find, that there was no such agreement, and that he was entitled to recover what his services were reasonably worth, it is hard to discover such intention in the peculiar verdict rendered by them. The appellee makes no objection to the verdict and judgment for $180.00 and is willing to pay the same; the appellant complains that it is too small.   But no error being pointed out either in the instructions, or in the rulings upon the evidence, so far as they apply to September and October, 1888, it remains only to consider such instructions and rulings as applicable to the period preceding September 1, 1888.

The trial court instructed the jury in substance, that the appellant was not entitled to recover for any services rendered by him prior to the first day of September, 1888, on the ground that his right of action therefor was barred by the five years' statute of limitations.   As this suit was begun on September 30, 1893, the five years began to run on September 30, 1888, and, of course, any services rendered before September 1, 1888, were rendered more than five years before the beginning of the suit.

The contention of appellant is, that he entered the service of appellee about June 1, 1884, under no definite agreement as to term of service or compensation.   There seems to be some ground for this contention, so far as the period of service from June 1, 1884, to July 1, 1885, is concerned.   It cannot be said, that, during these thirteen months, the employment was an employment by the

month, or for a particular sum per month; the amounts paid for services during this period were paid at irregular times and in different amounts. But on July 1, 1885, the appellant and George M. Pullman, the president of the appellee company, who had authority, under the by-laws of the company, to fix the salaries of its officers and employees, had a settlement, and, as a result thereof, the voucher for $6300.00 was prepared and executed. Up to July 1, 1885, appellant had drawn, on account of his services, $5900.00 in various amounts and at various times, and a check for $400.00 was then given him, so as to make the total amount theretofore drawn by him the sum of $6300.00. The voucher for that amount is, in form, a bill made out in his favor against appellee as debtor, and recites that there is due to him from appellee for personal services as general counsel for one month $300.00, and for twelve months $6000.00, amounting to $6300.00 for the period from June 1, 1884, to July 1, 1885. This bill is marked "approved" by appellee's president, and at the foot of it appellant, over his own signature, acknowledges the receipt of $6300.00 "in full for services as reported above and in full of all claims to date." The "services as reported above" are services for June, 1884, at $300.00, and for the succeeding twelve months from July 1, 1884, to July 1, 1885, at $500.00 per month, or $6000.00 per year. Whether the hiring prior to July 1, 1885, be regarded as a hiring by the month or by the year, the right of action for services prior to that date was certainly barred by the statute, as they were rendered more than eight years before the bringing of the present suit.

After July 1, 1885, and down to September 1, 1888, a different policy seems to have been pursued from that which controlled the action of the parties prior to that date; that is to say, the amounts paid for services were not paid at irregular times and in different sums, nor did the vouchers recite as before, that the amounts received were "on account," or "on account of services;" but the

amount paid for each month was exactly $500.00, and it was paid on or about the first day of the month succeeding the month for which it was paid; and for each one of such payments, except about five thereof, appellant signed a voucher acknowledging the receipt of $500.00 for personal services as general counsel "in full for services" for each separate month, "and in full of all claims to date."

After July 1, 1885, the hiring of appellant was a hiring by the month, and hence the Statute of Limitations began to run against the right of action for the amount due for each month's services on the first day of the succeeding month.

It seems to be claimed, that this is a case of indefinite hiring, and that the statute did not begin to run until the whole service was ended. We cannot concur in this view. Where an attorney is conducting a single suit, it has been held, that the Statute of Limitations cannot commence running, until the services contracted for have been performed by the ending of the suit, or by the termination of the retainer in some other mode. (*Walker* v. *Goodrich*, 16 Ill. 341). But where attorneys are regularly employed at a salary given for advice and legal superintendence and other services rendered from day to day, there is no reason why they should not stand upon the same footing as other salaried employees, so far as the Statute of Limitations is concerned. (*Mosgrove* v. *Golden*, 101 Pa. St. 605; *Adams* v. *Fort Plain Bank*, 36 N. Y. 255; *Hale's Exrs.* v. *Ard's Exrs.* 48 Pa. St. 22; *Phillips* v. *Broadley*, 11 Jur. 264).

Ordinarily, when a man is employed under a general agreement which fixes no term of service, and continues in service a long time, the hiring will be treated as a hiring by the year. (*Mosgrove* v. *Golden, supra; Davis* v. *Gorton*, 16 N. Y. 255). In case, however, of such long continued employment, the statute will ordinarily bar a claim for all outside of the five years immediately before the com-

mencement of the action, unless there is evidence to take it out of the operation of the statute. (*Mosgrove* v. *Golden, supra; Thompson* v. *Reed, Admx.* 48 Ill. 118; *Freeman* v. *Freeman,* 65 id. 106). But the rule, that, when the service is not under an express contract and is continued for a long time, the hiring will be understood to be by the year, gives way if the circumstances indicate a less period. The compensation will be regarded as being payable by the month, if such monthly payments are in accordance with the usual terms of such employment, or with the usual course of dealing between the parties themselves. (*Mosgrove* v. *Golden, supra; Davis* v. *Gorton, supra*). In the case at bar, the fact that for a period of more than three years the appellee paid appellant on or about the first day of each succeeding month for his services during the preceding month, and that appellant executed receipts for such payments as soon as made, raises the implication that the term of employment was by the month. If a person is employed by the month, and is to be paid at the end of each month, a right of action accrues and, consequently, the statute begins to run at the end of each month, and will bar that part of the wages which accrued more than five years before the action was brought, although the service was continued for several years. (1 Wood on Limitations,—2d ed.—sec. 120). In other words, where wages are due at fixed times, the statute runs from the date when due. (*Mirus* v. *Sturtevant,* 18 Ala. 359; *Davis* v. *Gorton, supra; Rider* v. *Union India Rubber Co.* 5 Bosw. 85; *Turner* v. *Martin,* 4 Rob. 661 ; *Butler* v. *Kirby,* 53 Wis. 188; *Phillips* v. *Broadley, supra;* 13 Am. & Eng. Ency. of Law, p. 726; *Beach* v. *Mullen,* 34 N. J. L. 344; *In re Gardner,* 103 N. Y. 533).

It follows from what has been said, that the appellant's right to sue for his services for each of the months prior to September 1, 1888, was barred after the lapse of five years from the latter date, unless there is some legal bar to the operation of the statute. The appellant claims,

that the evidence shows such acknowledgments as toll the statute.

The only words, claimed to have been uttered by the representative of appellee within five years before the beginning of this suit, which are alleged to have amounted to an acknowledgment of indebtedness, are those which are said by appellant to have been used by Pullman on November 7, 1888. Those words are: "Come back here at three o'clock and we will take up the matter of your salary and settle it," or "settle this thing." Pullman denies, that he used any such words, but, assuming that appellant is correct in saying that they were used, do they amount to such an acknowledgment as implies a new promise to pay, so as to stop the running of the statute?

It has been said, that it is not the acknowledgment, which renews or revives the debt; it is the new promise to pay the debt, made within the five years, which prevents the operation of the statute; and the acknowledgment will only have the effect of reviving the cause of action, when it is of such a character that a promise to pay the debt can be implied from it. The efficacy of the acknowledgment rests in the fact, that it gives rise to the inference of a promise to pay. If the implication of a promise to pay is rebutted by anything accompanying the admission or acknowledgment of the debt, such admission or acknowledgment cannot prevail. Where there is no express promise, an acknowledgment, such as will give rise to the implication of an implied promise, ought to contain an unqualified and direct admission of a previous debt, barred by the Statute of Limitations, as being still unpaid and subsisting. (*Hunter* v. *Kittredge's Estate*, 41 Vt. 359; *Henry* v. *Root*, 33 N. Y. 526; *Custy* v. *Donlon*, 159 Mass. 245; 13 Am. & Eng. Ency. of Law, p. 750). The decisions of this court are in line with these principles. We have held in a number of cases, that, in order to remove the bar of the statute, the plaintiff must prove either an

express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is due and unpaid, nothing being said or *done* at the time rebutting the presumption of a promise to pay; and that the promise to pay the debt must be of such a character as clearly to show a recognition of the debt and an intention to pay it. (*Ayers* v. *Richards*, 12 Ill. 146; *Parsons* v. *N. I. C. and I. Co.* 38 id. 430; *Norton* v. *Colby*, 52 id. 198; *Carroll* v. *Forsyth*, 69 id. 127). Now, it is quite clear, that the words attributed to Pullman at the interview of November 7, 1888, do not come up to the requirements thus indicated.    They do not show any recognition of indebtedness by appellee for salary over and above the $500.00 per month which had been regularly paid for years, nor do they show any intention to pay any such salary.    The words in question contain no unqualified admission of a subsisting debt due and unpaid.    If it was said: "I will settle this thing," the reference was not to a settlement of a prior conceded indebtedness upon book accounts, the remedy upon which had been barred by the statute; but the expression was rather the indication of a willingness to hear what was to be said upon the subject of an increased salary, and to "settle" or end the matter.

It is contended, however, that the words said to have been used on November 7, 1888, should be considered in connection with words used in conversations held before September, 1888, and before the commencement of the period of five years preceding the institution of this suit. Appellant swears that, in such conversations held from time to time during a period of more than four years after June 7, 1884, Pullman told him, that his salary should be fixed and dated back to the beginning of his service in June, 1884.    Pullman denies under oath that any such conversations were had, but assuming what appellant says to be true, can such prior conversations be carried forward to strengthen and help out the alleged

acknowledgment made on November 7, 1888?   It may be
a question, whether conversations, relied upon as con-
taining an acknowledgment sufficient to take a barred
claim out of the statute, should not be considered sepa-
rately.   "Several insufficient acknowledgments will not
constitute a sufficient one."   (*Patterson* v. *Neuer*, 165 Pa.
St. 66).   But, if the conversations in this case from June,
1884, to November, 1888, can all be considered together
in determining whether there was in them a sufficient
acknowledgment by appellee of an indebtedness for sal-
ary over and above what was actually paid, they must
not only show an unqualified admission of the indebted-
ness claimed, but it must appear that nothing was said
or *done* at the time of their occurrence, which rebuts the
presumption of a promise to pay such indebtedness.   The
evidence is clear, that, while the conversations sworn to
by appellant were taking place during the period afore-
said, appellee was paying him $500.00 on the first day of
each month, and presenting him with vouchers, which he
signed, reciting that such sums of $500.00 each were re-
ceived in full of services for each of such months, "and in
full of all claims to date."   Appellant says, that he was
making claims for more salary during more than four
years, and yet, while pressing such claims, he was at the
same time signing vouchers every month in full of all
claims.   These monthly payments and the execution of
these monthly vouchers were acts done, which must be
regarded as taking place at or about the time of the con-
versations, and must be considered in connection with
them, and as bearing upon their interpretation, when
such conversations are presented as acknowledgments of
indebtedness set up in bar of the running of the Statute
of Limitations.   Considered thus as things "done at the
time," they rebut the presumption of a promise to pay.
The fact, that appellee made the monthly payments of
$500.00 each and obtained from appellant these monthly
vouchers therefor without any fraud or misrepresenta-

tion practiced upon him, indicates a denial of liability on the part of appellee for any more indebtedness than that specified in the vouchers. While an acknowledgment, which is of such a nature that a promise to pay the debt can be implied from it, will take the debt out of the statute, yet it is well settled, that, "when the admission is accompanied by a denial of liability existing at the time of the admission, no promise to pay the debt can be implied." (*Hunter* v. *Kittredge's Estate, supra*).

The statements, to the effect that the salary would be fixed and dated back, which are alleged to have been made often during the whole period of service, and at least once after its termination, are said to have postponed the running of the statute until the salary should be fixed, or its payment refused after being fixed. The statements so made are treated by appellant's counsel as negotiations or assurances of adjustment, which should have the equitable effect of preventing the statute from running. To sustain this position reference is made to the case of *Railway Conductors, etc. Benefit Ass.* v. *Loomis*, 142 Ill. 560. It was there said, that, where an insurance company leads a party to delay the bringing of suit by holding out hopes of adjustment or by making promises to pay, it should be estopped from taking advantage of such delay by pleading the Statute of Limitations. We are satisfied, upon further reflection, that the language there used goes too far, and should be limited in its application to cases, where the insurance company seeks to take advantage of the delay by relying upon the limitation clause in its own policy requiring suit to be begun within a certain time. Such is the purport of the cases there referred to; and what was said upon this subject was not necessary to the decision there, as there was nothing in that case tending to establish a waiver by the company of its right to plead the Statute of Limitations. Where the parties expressly agree together to suspend legal remedies for the purpose of making inquiry into the

merits of a disputed claim, or for the purpose of effecting an adjustment thereof, or in order to await the result of negotiations in reference thereto, advantage should not be taken of the Statute of Limitations in respect to the time employed for such purpose; but a party should not be allowed to trust too long to the anticipated outcome of such proceedings and until his right to legal remedies has been lost by lapse of time. (*East India Co.* v. *Paul,* 7 Moore's Priv. Counc. Cases, 85; *Gooden* v. *Insurance Co.* 20 N. H. 73; *Amy* v. *Watertown,* 130 U. S. 320; *Randon* v. *Toby,* 11 How. 493; *Gaylord* v. *Van Loan,* 15 Wend. 308; *Utica Ins. Co.* v. *Bloodgood,* 4 id. 652; *Shapley* v. *Abbott,* 42 N. Y. 443; *Crane* v. *French,* 38 Miss. 503). It cannot be said here, that the appellant was lured into any unnecessary delay in bringing suit for additional salary, when he was every month required to sign, and did sign, a voucher in full for his services for such month, and in full of all claims for such additional salary to the date of his signature.

It is furthermore urged in behalf of the appellant, that it should have been left to the jury to determine whether or not there was such an acknowledgment of indebtedness as would stop the running of the statute. It is true, that in many cases the question must be left to the jury under proper instructions to determine whether the defendant has acknowledged the debt or promised to pay it. But in *Roll* v. *Morrison,* 1 Pet. 362, it was said by Justice STORY: "If there be accompanying circumstances which repel the presumption of a promise or intention to pay, if the expressions be equivocal and indeterminate leading to no certain conclusions, but at best to probable inference, which may affect different minds in different ways, we think they ought not to go to the jury as evidence of a new promise to revive the cause of action." This language was quoted with approval in *Carroll* v. *Forsyth,* 69 Ill. 127, and in *Norton* v. *Colby,* 52 id. 198. (See, also, *Murphy* v. *Holway,* 25 Ill. App. 554). As has already been stated, there were here accompanying circumstances

to be found in the execution of the monthly vouchers, which repelled the presumption of a promise or intention to pay any additional salary. The words, attributed by the appellant to the president of the appellee company, considered in connection with the accompanying circumstances here referred to, could lead to no certain conclusion, but at best only to probable inference as to any intention to pay. But even if this were not so, the instruction asked by appellant upon the subject of acknowledgment was properly refused, because it withheld from the consideration of the jury the question whether or not there were any accompanying circumstances of the character indicated. (*Foster* v. *Smith*, 52 Conn. 449). If they were such as to rebut the presumption of a promise to pay, there was no such unqualified acknowledgment or admission of the debt as the authorities require.

But even if there were a doubt as to the correctness of the instructions last referred to, this judgment ought not to be disturbed. If this case was reversed and sent back, another trial could not possibly result in a more favorable verdict for the plaintiff. A judgment will not be reversed for error in an instruction when it appears affirmatively that the defeated party was not injured by the error. The absence of such injury is clearly manifest when the undisputed evidence establishes the correctness of the verdict, so that, either with or without the erroneous instruction, the verdict could not have been otherwise than it was, and, had it been otherwise, would have been set aside by the court. (*Gray* v. *Merriam*, 148 Ill. 179; *Chicago Public Stock Exchange* v. *McClaughry*, id. 372).

There are two views which may be taken of the vouchers executed by appellant. In the first place, they may be regarded as instruments embodying agreements of accord and satisfaction. "If there is an unliquidated claim, or the sum due is in dispute, the payment of any agreed sum, or the promise to pay it, in full discharge, will be deemed to have proceeded on a sufficient consid-

eration, and will be adequate." (Bishop on Contracts, sec. 56). Where a claim is unliquidated and the amount due is not ascertained and fixed, the payment and acceptance of a certain sum, as a satisfaction, is a full discharge of the demand. (*Donohue* v. *Woodbury*, 6 Cush. 148; *Stockton* v. *Frey*, 4 Gill, (Md.) 406; *McDaniels* v. *Bank of Rutland*, 29 Vt. 230). "If the debt or claim is disputed or contingent at the time of payment, the payment, when accepted, of a part of the whole debt, is a good satisfaction." (1 Am. & Eng. Ency. of Law,—2d ed.—p. 419).

By the undisputed testimony of both appellant and Pullman, the amount of appellant's claim for services was unsettled up to July 1, 1885. On that day, or soon thereafter, the voucher for $6300.00 was executed, and the sums therein named were paid and accepted in full of services and of all claims up to that date. Pullman swears that, after July 1, 1885, the matter of salary was settled and nothing was said to him about an unadjusted claim therefor, but appellant swears that he was demanding more salary after·that date and that his claim therefor was unsettled, and the amount due to him unfixed. He is, therefore, committed in favor of unliquidated demands after that date; and, while his demands were thus unliquidated, the monthly vouchers, showing the payment and acceptance of certain sums in full of services and all claims to date, were executed. It follows, that all the vouchers can well be regarded as agreements of accord and satisfaction.

In *Rosenmueller* v. *Lampe*, 89 Ill. 212, a party, who was employed by the trustees of a church to perform certain services, was paid $100.00 by them on July 10, 1876, and on that day executed the following receipt: "Received of J. C. Mueller, treasurer of the Catholic church, $100.00, in full for salary as teacher, and services in church, from September 1, 1875, to July 1, 1876;" and we there said: "The $100.00 would appear to have been paid in settlement of a dispute between the parties, appellee claiming

more at the time, according to the testimony.    It is, then, a good accord and satisfaction."

If these vouchers thus embodied agreements of accord and satisfaction, the rule applies that, where the facts in respect to the arrangement or accord between the parties are ascertained, their effect is purely a question of law, and is not to be submitted to the jury.    (2 Greenleaf on Evidence,—15th ed.—sec. 28a; *Vedder* v. *Vedder*, 1 Denio, 257).

But let it be supposed, in the second place, that the vouchers are, as is claimed by appellant, mere receipts, which can be explained or contradicted by parol evidence. It is true, that a written receipt may be explained by parol; but it is *prima facie* evidence of the facts recited in it; and, the evidence furnished by it being of the highest and most satisfactory character, its force can only be impaired by testimony which is convincing. The proof, offered to explain it, must be clear and unmistakable. It must be overcome, if overcome at all, by a clear preponderance of the evidence.    (*Winchester* v. *Grosvenor*, 44 Ill. 425 ; *Rosenmueller* v. *Lampe, supra; Neal* v. *Handley*, 116 Ill. 418).

In the case at bar, the receipts introduced are *prima facie* evidence, that appellant was paid $500.00 per month in full discharge of all that was due him for legal services during the period of his employment by appellee, and that he accepted the amounts so paid as a satisfaction of all claims for salary.    Appellant swears, that the voucher for $6300.00 was not executed in full payment for all that was due to him on July 1, 1885, but Pullman swears that he and appellant then agreed upon $500.00 per month as the amount of his compensation, and that the voucher of that date was executed in pursuance of such agreement.    The oath of the appellant stands over against the oath of the other party to the transaction. The sworn statements of the two witnesses are neutralized.    The testimony of Pullman is "quite as clear, quite

as reasonable, and quite as conclusive upon the point in controversy as that of appellant, and if they stand equal, the receipt must have its *prima facie* effect." (*Levi* v. *Karrick*, 13 Iowa, 344; *Neal* v. *Handley, supra; Stapleton* v. *King*, 33 Iowa, 28; *Fuller* v. *Crittenden*, 9 Conn. 364.

The same observations apply to the vouchers executed after July 1, 1885. Notwithstanding the *prima facie* evidence furnished by these vouchers that appellant's compensation was adjusted and fixed at their respective dates, appellant swears that it was not fixed or adjusted, and that Pullman said he would fix it and date it back. On the other hand, Pullman swears with great positiveness, that it was fixed and adjusted, and that he never said that he would fix it. The statements of the parties stand equal, and the vouchers must have their *prima facie* effect. Appellant does not deny that he executed these vouchers and received the money mentioned therein.

The receipts are unambiguous in their terms. They are affirmative, and, until rebutted, conclusive evidence of what they contain. They have not been rebutted. The testimony, introduced for the purpose of impairing their force, is not convincing. The proof offered to explain them is not clear and unmistakable. They have not been overcome by a clear preponderance of the evidence. The burden was thrown upon the appellant to impeach them by showing that they were "obtained by fraud, executed without proper knowledge of the facts, mistake, or the like. With him was the laboring oar as to this issue, therefore." They have not been thus impeached. (*Levi* v. *Karrick, supra*).

The receipts being unimpeached and standing as conclusive evidence of what they contain, no just purpose would be subserved by reversing the judgment and remanding the cause.

The judgments of the Appellate and circuit courts are affirmed.                                 *Judgment affirmed.*