### Jacob Meyer et al. v. P. J. McCumber et al.

1. LIMITATIONS—*When the Statute Begins to Run Against a Claim for Attorney's Fees.*—While it is held in some jurisdictions that the statute of limitations does not begin to run against a bill for attorney's fees until the dissolution of the relationship between the attorney and his

client, no such rule is recognized in this State. On the contrary the rule is that the statute of limitations commences to run when the services contracted for have been performed by the termination of the suit or when the contract of retainer has in some other mode been determined.

2. SAME—*The Entire Litigation Embraced in Several Suits Held to Be One Transaction.*—In a suit to collect attorney's fees where the statute of limitations has been pleaded, the court discusses the evidence and holds that each of several suits can not be regarded as a separate and distinct transaction, based upon a separate and distinct contract of retainer, but that the entire litigation embraced in all the suits must be considered as one continuous transaction based upon one contract of employment and that the statute did not begin to run until the last suit was determined.

3. WITNESSES—*Effect of Contradictory Statements by, upon Their Credibility.*—The mere fact that a witness has made different statements at other times, does not of itself warrant a jury in entirely disregarding his testimony, but is merely a matter for them to consider in passing upon the credibility and weight of the testimony of such witness.

**Assumpsit,** for attorney's fees. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed March 24, 1898.

### STATEMENT OF THE CASE.

This action was brought by appellees to recover for services as attorneys at law and for disbursements made in conducting several suits in North Dakota, which suits grew out of an attachment of the goods of Gillett Bros., upon a debt due from Gillett Bros. to appellants. Appellants, through their Chicago lawyers, employed appellees to collect appellants' claim against Gillett Bros., to take action to protect claim, and to begin the attachment proceedings, December, 1888. It appears that as a result of this attachment, and in connection therewith, there arose five other suits. Two were actions at law, brought by Gillett Bros. against the sheriff for damages for conversion of exempt property and for excessive levy; one was a case submitted to the court there upon stipulation in a controversy as to application of funds in hands of sheriff, arising from sale of stock attached; one was an action at law brought by a mortgagee of the attached property for damages for a conversion

thereof; and one was a suit in chancery, wherein relief was sought by appellants and others against Gillett Bros. and the mortgagee, by injunction and appointment of a receiver.

These various suits were pending at different times from December, 1888, until December 15, 1890, when a final order was entered in the case submitted upon stipulation. The order in that case had been signed by the trial judge upon May 10, 1890, but the entering of it was deferred to December 15th, because of some question as to an appeal. It appears from the testimony of appellees that in the period between May 10 and December 15, 1890, services were rendered by them in this case in negotiating for stays of the order in view of an appeal.

The suit in which this appeal is prosecuted was begun by appellees on September 10, 1895, more than five years after the rendering of all services by appellees, save such services as were rendered in the case last mentioned, and rendered in reference only to the staying of the entry of the order previously decided upon in that case.

Appellants pleaded the general issue, and the statute of limitations. The verdict was for appellees, and judgment was rendered thereon.

BULKLEY, GRAY & MORE, attorneys for appellants.

WILBER, ELDRIDGE & ALDEN, attorneys for appellees.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

It is contended by counsel for appellants, first, that the verdict is against the weight of the evidence; second, that the statute of limitations barred a recovery; and third, that the trial court erred in modifying and refusing instructions tendered by appellants.

It is not contended that the services rendered by appellees in the several suits in question were unauthorized by appellants, but it is urged that those suits grew out of inattention on the part of appellees to the interests of their clients, appellants, and hence that they should not be permitted to recover.

It seems that the sheriff levied upon more of the property of Gillett Bros., upon the attachment writ, than was warranted, and upon more than had been directed by appellees. And it is argued that a proper attention upon the part of appellees to the business of their client, would have resulted in the immediate discovery and rectifying of this unwarranted levy, and thereby the several suits which resulted from this levy would have been avoided. This contention might perhaps be deserving of consideration, were it not for the fact, disclosed by the record, that an opportunity was given appellants in January, 1889, to deliver back the goods levied upon, and thereby avoid consequent litigation, which opportunity appellants, against the advice of appellees, declined to accept. McCumber, one of the appellees, testified: "I also told him (attorney for appellants) at the time, that we could protect ourselves by delivering back the goods, and advised him to advise clients to that effect. The attorneys for Gillett had agreed to release us from all damages at that time if we would release the levy and deliver back the goods." On February 8, 1889, appellants' Chicago attorneys wrote appellees: "Your Mr. McCumber called on us the 25th of last month, and explained the situation, etc. In his judgment our case is somewhat doubtful, but we, of course, have the usual fighting chances. We have consulted with our clients, who are not disposed to give up the case without a fight." On May 6, 1889, appellees wrote attorneys for appellants: "Your client has neither taken your nor our advice to drop the attachment, when we could, without a judgment against the sheriff," etc.

It is quite apparent from this and other correspondence that the disastrous results of this attachment suit are not so much attributable to an unwarranted levy, as to a stubborn insistence upon maintaining the same, and that appellants rather than appellees are responsible for the results. From an examination of all the evidence, we can not say that the verdict is not warranted upon the merits of the case.

But it is urged that the statute of limitations applies to all of the account claimed by appellees, and for which this recovery was held.

If the different items in this account, arising from the five suits which together constituted the litigation between these parties, may be treated as based upon as many distinct contracts of employment, whether expressed or implied, then nearly all of the claims of appellees would be barred. For while it is held in some jurisdictions that the statute of limitations does not begin to run against a bill for attorney's fees until the dissolution of the relationship between the attorney and his client, no such rule is recognized in this State. On the contrary, the rule here, as announced in Walker v. Goodrich, 16 Ill. 341, and approved in Ennis v. Pullman Pal. Car. Co., 165 Ill. 161, is, "The statute of limitations could not commence running till the services contracted for had been performed, by the termination of the suit, or the contract of retainer had, in some other mode, been determined," citing Whitehead v. Lord, 11 L. & E. 587; Foster v. Jack, 4 Watts R. 334; Harris v. Osbourn, 2 Cromp. & M. 628.

It would follow from the language of this decision that if each of these several suits is to be regarded as a separate and distinct transaction, based upon a separate and distinct contract of retainer, then each was barred by the operation of the statute save the one in which final order was entered on December 15, 1890.

But we are unable, from the circumstances of this case, to so view these suits. The original contract of retainer was to collect the claim against Gillett Bros., and "to take immediate action to protect the claim." There was no specific and express employment as to each of the five suits which resulted from the attachment. Yet it can not be said that the services of appellees in any of them were unauthorized. The correspondence shows that appellants authorized the attachment and sanctioned the subsequent appearance of appellees for them in the other suits. Each of the other suits was so related to the final collection of appellants' claim, to which end appellees were employed, that it was essential that each should be prosecuted or defended in order to accomplish the purpose of the employ-

ment. In the suits against the sheriff, the appellants were parties in interest by reason of the indemnifying bond given to the sheriff by them, and their interest is further very forcibly evidenced by the fact that the final order of the Dakota court directed the moneys realized upon sale of the property attached to be applied upon the judgment recovered by Gillett against the sheriff. It can not be said that appellees could avoid participation in any one of these suits consistently with the carrying out of their undertaking under the original contract of retainer, viz., to collect the claim of appellants against Gillett Bros. Therefore, the entire litigation embraced in all the suits in question, must be considered as one continuous transaction based upon one contract of employment. The services of appellees in this behalf were ended when the final order in the last of these suits was entered and the litigation thereby ended, which was upon December 15, 1890, and within five years of the bringing of this suit. At that time appellees' right of action for all fees and disbursements under their contract of retainer first accrued.

The remaining question is as to the modification and refusal of instructions. The first instruction as modified, stated the rule as to the application of the statute of limitations correctly, as we have held in this case. The second instruction as modified is subject to criticism as casting the burden of proof upon defendants as to any defense. It could not, however, have worked any prejudice to appellants, for there is no conflict of evidence in this case, to which it could have been applied by the jury to the harm of appellants. The fourth instruction was properly refused. The mere fact that a witness had made different statements at other times, does not, of itself, warrant a jury in entirely disregarding his testimony; it would merely be a matter for them to consider in passing upon the credibility and weight of the testimony of such witness. Nor does it appear that there were any such contradictory statements in the evidence as would warrant the instruction. The fifth instruction was sufficiently covered

by the third, which was given, and which was general in application, and had not the fault of the fifth in singling out a particular witness.   The sixth instruction was abstract in form.   The seventh was insufficient in its definition of damages—would be bad in any case, and was not warranted by the facts in this case.   The judgment is affirmed.